In the Interest of M.R., a juvenile, and E.R., a juvenile.

Nos. 65481, 65488.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 14, 1995.

John C. Maxwell, St. Charles, guardian ad litem.

Claude C. Knight, St. Charles, for respondent.

GARY M. GAERTNER, Judge.

Appellants, M.R. and E.R., juveniles, appeal from an order of the Circuit Court of the County of St. Charles terminating the parental obligations of J.R. ("father") and I.R. ("mother"), the adoptive parents of appellants. We affirm.

M.R., born July 21, 1976, and E.R., born September 21, 1979, both victims of neglect and physical abuse at the hands of their natural mother,[1] were adopted by father and mother on August 21, 1987. Father and mother had three other adopted children in their home at that time: E.R., a male, born on August 12, 1968; K.R., a male, born on December 21, 1970; and J.R.,[2] a female, born on March 5, 1976.

On February 8, 1991, appellants were removed from the adoptive home after they made allegations of sexual abuse against K.R. Father and mother refused to believe appellants' allegations, and also refused to protect the girls from contact with K.R. while an investigation was conducted into the charges. Appellants were placed in the custody of the Division of Family Services ("DFS"). For the first several months after removal from the adoptive home, appellants spent time between foster homes and hospitals, and finally ended up at a residential care facility where they were provided with a therapeutic, structured environment.

On April 12, 1993, a Petition for Termination of Parental Rights was filed by the juvenile officer of St. Charles County. Guardian Ad Litem ("GAL") subsequently filed a motion for alternative order of support on July 13, 1993. In this motion, GAL suggested that if the court granted the petition for termination of parental rights, the court should alternatively enter an order requiring father and mother to continue financial support for M.R. and E.R., due to the extreme nature of the girls' emotional and mental problems.

1. The natural father died while M.R. and E.R. were still in the home of the natural parents.

2. J.R. was described by I.R. as "autistic, retarded, and has cerebral palsy."

Father and mother filed their consents to the termination of parental rights on July 20, 1993.[3] That same day, a hearing was held on the petition before a Commissioner of the Family Court Division. Live testimony was presented at the hearing by father and mother; Sandra Hartke, a social worker for DFS; Wendy Ellis, a licensed clinical social worker; Raymond Grush, the juvenile officer responsible for filing the petition at issue; and Tracy Borgmeyer, an alternative care worker for DFS.[4] In addition, reports by various psychiatrists who were working, or had worked, with M.R. and E.R. were entered as exhibits.

The evidence established that M.R. was suffering from major depression with histrionic and borderline traits, post traumatic stress disorder, and attention deficit disorder. M.R. suffered from emotional suicidal gestures and experienced dramatic mood swings. She was on medication prescribed by her psychiatrist. Her prognosis was "guarded to fair", and it was believed she would require a structured living environment for an extended period of time, potentially well beyond the age of eighteen.

E.R. was diagnosed as suffering from dysthymic disorder, oppositional deficit disorder, mild mental retardation, mixed speech and language developmental delays, major affective disturbance, recurrent depression, learning disorder, attention deficit hyperactive disorder and possible borderline personality disorder. She suffered from hallucinations, screamed and yelled, and talked to and cursed at inanimate objects. She, too, was prescribed medication by her psychiatrist. Her prognosis was "guarded", and it was determined she would require a structured living environment which, as with M.R., may extend well beyond the age of eighteen.

3. *See* RSMo 211.444 (1986).

4. Father and mother had filed motions to produce M.R. and E.R. at the hearing. In response, the GAL filed a Motion for Protective Order. At the onset of the hearing, GAL and counsel for mother and father stipulated that, due to concern for the children, the children would not be required to "give evidence, appear here this morning or testify, either in open court or in chambers."

Although all witnesses agreed it was in the best interests of the girls that there be no further contact between father and mother and M.R. and E.R., the DFS representatives suggested the best interests would not be served by a termination of parental rights. Sandra Hartke testified that because of the severity of the girls' problems, they were not adoptable. As such, there would be no point in terminating parental rights to free the girls for adoption. Tracy Borgmeyer stated DFS supported the position that "for the children, it is not in their best interests to terminate parental rights. One reason would be that there is no prospect for adoption. The other reason would be that they would not continue to receive any financial support from [father and mother]." Ms. Borgmeyer agreed that if parental rights were terminated, M.R. would be without a source of support one year and one day after the date of the hearing, M.R.'s eighteenth birthday.[5]

The Commissioner entered his Findings of Facts, Conclusions of Law and Recommendations on September 13, 1993. The findings, conclusions and recommendations were subsequently adopted by the trial court. Supplemental findings, conclusions and recommendations were later entered by the Commissioner and adopted by the court. It was determined the best interests of the children would be served by a termination of father and mother's parental rights. The court concluded there was no foundation for GAL's request that financial support continue in the event parental rights were terminated. It is from this order M.R. and E.R. now appeal.

Five points are raised for review. First, appellants argue the trial court erred by stating as a supplemental finding that M.R. and E.R. might, with proper treatment and care, become likely candidates for adoption. Appellants then argue error in the court's

5. It was admitted that there had been discussions about placing M.R. in a structured, independent living situation available for young adults, ages 17 through 21. Ms. Borgmeyer suggested this would only occur if M.R. evidenced "some emotional and behavioral growth, which would allow her to proceed into this program."

supplemental finding that appellants' rights of inheritance, if any, could be terminated by will, since, as adopted minors, appellants are eligible for certain statutory entitlements which cannot be abrogated by will. Appellants' final three points can be presented as an argument that the court erred in failing to enter an order that father and mother continue financial support for M.R. and E.R. despite the fact parental rights were terminated. We find this final argument dispositive.

■ Our standard of review in termination of parental rights matters requires that we sustain the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of A.M.K.*, 723 S.W.2d 50, 52 (Mo.App.E.D.1986). In any proceeding for termination of parental rights, the best interests of the children are the primary concern. *P.A.W. v. A.M.W.*, 716 S.W.2d 284, 288 (Mo.App.E.D.1986).

■ Interestingly, GAL does not argue that the trial court erred in terminating parental rights. Instead, what is argued is that the court erred in failing to order father and mother to continue support for M.R. and E.R. despite the fact their parental rights were terminated.

RSMo § 211.444.1 (1986) allows the court to terminate parental rights if it determines the termination is in the best interests of the children and if the parents have consented in writing to such termination. RSMo § 211.447 (Supp.1993) provides additional factors the court may consider in determining whether parental rights should be terminated. Each of the provisions addressing termination of parental rights discusses "rights," and nowhere is there a distinction made between parental "rights" and parental "obligations". Additionally, this court can find no case law in Missouri which makes a distinction between "rights" and "obligations". Instead, we find cases bolstering a holding to the contrary.

In *In Interest of R.A.S.*, 826 S.W.2d 397 (Mo.App.W.D.1992), the natural father filed for voluntary termination of his parental rights. The trial court dismissed the petition, finding it was not in the best interest of the child that father's rights be terminated. Father appealed. The Western District affirmed, noting the parental duty of financial support "is taken very seriously under Missouri law." *Id.* at 400–401. Moreover, the court stated the duty of support could not be "avoided in the guise of a voluntary termination proceeding. The termination of parental rights does not merely sever the rights of the parent to the child, but also severs the child's right to the parent." *Id.* at 401. The court refused to enter an order terminating father's parental rights so the minor child would have the benefit of support from both his custodial mother and father. The court obviously recognized no distinction between parental "rights" and the parental duty of support and viewed one as contingent upon the other.

Similarly, in *In Interest of B.L.G.*, 731 S.W.2d 492 (Mo.App.S.D.1987), the adoptive father of B.L.G. consented to the voluntary termination of his parental rights. The trial court entered judgment granting the termination. Mother appealed. The Southern District reversed, finding that relieving father of his financial obligations to B.L.G. was not in the best interest of the child. *Id.* at 499. There was no discussion as to the possibility of terminating parental rights, but continuing the duty of support. We find it obvious the Southern District viewed parental rights and obligations in the same vein as the Western District, based on the following discussion:

> Before termination may be ordered under § 211.444 there must be a finding, supported by competent evidence, that termination is in the best interest of the child. The statute deals with termination of the rights of a parent. This record shows an attempt by the parent to terminate, solely for his own interest, his parental duties. This court holds that the record is insufficient to support a finding that termination is in the best interests of [B.L.G.]. *Id.*

Appellants provide us with a detailed history of the adoption and juvenile codes of this state, and refer us to cites from other jurisdictions purporting to differentiate between

parental rights and parental duties. We find none of this helpful. Although other jurisdictions have, either by statute or through case law, determined to place one egg entitled "parental rights" in one basket and a separate egg referenced as "parental duties" or "obligations" in a separate basket, Missouri apparently has chosen to place all of its eggs in one basket and simply reference the entire basket as "parental rights". As such, we affirm the trial court's decision to include the obligation of financial support as part and parcel of "parental rights" and to recognize the termination of parental rights as the termination of parental support as well.[6]

The order of the trial court is affirmed.

REINHARD, P.J., and CRAHAN, J., concur.

---

**6.** Because appellants have not challenged the court's order terminating parental rights, and because we agree with the trial court that Missouri does not recognize a distinction between parental rights and parental obligations, we see no need to address appellants' first two points on appeal and affirm pursuant to Rule 84.16(b).