**In the Interest of M.J. and C.J. T.J., Appellant,**

v.

**GREENE COUNTY JUVENILE OFFICE, Respondent.**

No. 24144.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 14, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 6, 2001.

M. Elise Barker, Springfield, for appellant.

William Prince, Springfield, for respondent.

JOHN E. PARRISH, Judge.

T.J. (father), biological father of M.J., born October 11, 1985, and C.J., born January 8, 1989, appeals a judgment of the Circuit Court of Greene County terminating his parental rights. The judgment also terminated the parental rights of the children's mother. She does not appeal. The judgment is affirmed.

Father was incarcerated in a federal prison in 1991 after he pleaded guilty to distributing cocaine on a playground, use of firearms during a drug trafficking offense, and conducting financial transactions designed to avoid federal reporting

requirements. The children's mother was incarcerated in federal prison in 1994 for convictions of conspiracy to distribute cocaine and false monetary transaction. Clara Small, the children's paternal grandmother and legal guardian, obtained custody of the children. The children resided with her in Wisconsin.

In August 1995, M.J. and C.J. came to Springfield, Missouri, without Ms. Small's permission. A petition was filed August 22, 1995, in the juvenile division of the Circuit Court of Greene County, in case No. 195JU0344 (the juvenile case). It alleged that M.J. and C.J. were in Greene County, Missouri; that they were in need of care and treatment because they were without adequate and proper care, custody, support, supervision and parenting.[1] The children were placed in the custody of the Missouri Division of Family Services (DFS) "with permission for physical custody with the biological mother." Hearing in the juvenile case was scheduled for November 9, 1995.

A September 14, 1995, docket entry in the juvenile case states the children were "removed from the biological mother's physical custody and returned to alternative care placement." The docket entry authorized "[DFS] to provide appropriate out of home care and maintenance."

On November 2, 1995, the court continued the hearing in the juvenile case to January 10, 1996. Following the January 10, hearing the court found the children were in need of care and services. It exercised jurisdiction over the children and placed them under the care of DFS for placement in alternative care. The file in the juvenile case shows no further hearings in the juvenile case other than periodic dispositional review hearings. *See* § 210.720, RSMo 1994.[2] The petition to terminate parental rights of both parents was filed April 15, 1999. Judgment terminating parental rights was entered January 30, 2001.

 "Juvenile proceedings and appellate review of such, partake the nature of civil proceedings and the scope of review is as in court-tried cases." *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 698 (Mo.App.1984). The trial court order terminating parental rights is the judgment from which the appeal is taken. § 211.261, RSMo 2000; Rule 120.01. The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of S.J.G.*, 871 S.W.2d 638, 640 (Mo.App.1994), *citing In Interest of L.W.*, 830 S.W.2d 885, 886 (Mo.App.1992). This court views the facts and reasonable inferences from those facts in the light most favorable to the judgment. *In Interest of M.L.K.*, 804 S.W.2d 398, 400 (Mo.App.1991). Where multiple statutory bases for termination of parental rights are found, all that must be found in order to affirm the judgment is that one of the statutory grounds was proven and that termination is in the best interests of the children. *In Interest of S.J.G.*, *supra*, at 641.

The trial court found the following statutory grounds for termination of parental rights existed:

a. The minor children have been in foster care for fifteen of the most recent twenty two months.

---

1. The trial court in this case judicially noticed its file in Case No. 195JU0344.

2. The statute was amended in 1998. The amendment included substitution of the term "permanency hearing" for "dispositional hearing." Compare § 210.720, RSMo Cum. Supp.1998.

b. That [M.J. and C.J.] have been abused and neglected and adjudicated abused and neglected in a jurisdictional hearing held in Greene County Juvenile Court as required under Section 211.447 as amended to date. There has been a repeated and continuous failure by the mother and father, although physically and financially able, to provide the children with adequate food, clothing, shelter or education as defined by law, or other care necessary for the children's physical, mental or emotional health and development.

c. That the minor children have been under the jurisdiction of the Court for a period of one year and the conditions which led to the assumption of jurisdiction by the court continue to exist.

See § 211.447.2, .4 and .5.[3]

Father presents one point on appeal. It alleges the trial court erred in determining that allegations in the petition were true and that termination of parental rights was in the children's best interests "in that there was insufficient evidence for the court to find ... that [father] had repeatedly or continuously failed, although physically or financially able, to provide the children with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for their physical, mental, or emotional health and development, and that the conditions which led to the assumption of jurisdiction still persisted, or conditions of a potentially harmful nature continued to exist so that the children could not be reunited with [father] in the near future in that the evidence established that [father] financially supported his children to the best of his ability, had communicated and visited with his children on a regular basis, sought parenting classes and further education, intensive counseling, improved his parent-

ing abilities, complied with the majority of the terms of the treatment plans, and clearly indicated that he was interested in and committed to providing his minor children with the necessary care, custody and control."

Although the trial court found three statutory grounds for terminating father's parental rights, father's point on appeal challenges only two of those grounds: (1) that he left the children without any provision for parental support and without making arrangements to visit or communicate with them, although being able to do so, and (2) the children had been under the jurisdiction of the juvenile court for a period of one year and the conditions that led to the assumption of jurisdiction still persisted and there was little likelihood those conditions would be remedied at an early date so the children could be returned to father in the near future. See §§ 211.447.2(2)(b), 211.447.4(3) and 211.447.5.

■ Father does not challenge the remaining ground that the children had been in foster care for at least fifteen of the twenty-two most recent months. The evidence was that the children had been in foster care continually from January 10, 1996, the time they were adjudicated to be subject to the jurisdiction of the juvenile court in the juvenile case, until May 23, 2000, the date of the hearing on the case that is the subject of this appeal, more than 51 months. Thus, if the record supports the trial court's finding that termination of parental rights was in the best interests of the children, the judgment will be affirmed. In Interest of S.J.G., 871 S.W.2d at 640.

■ The trial court findings with respect to the children's relationships with

3. References to statutes are to RSMo Cum. Supp.1998 unless stated otherwise.

both parents included that the children had no healthy emotional ties to either parent. It found the parents had not maintained any type of regular visitation with the children; that no evidence was presented that the parents had provided regular or consistent support for the minor children. It found the parents had shown a disinterest in, and lack of, commitment to the children. The trial court further found there was evidence that there were no possible services available from DFS that would bring about lasting parental adjustment that would enable return of the children to either parent within an ascertainable period of time. The record supports those findings.

 The trial court's determination of what is in a child's best interests is an ultimate conclusion based on the totality of the evidence presented. *In re A.P.*, 988 S.W.2d 59, 62 (Mo.App.1999). It is the trial court's duty to weigh the evidence presented in reaching a conclusion as to a child's best interests. Evidence is not reweighed by appellate review. *In re K.K.J.*, 984 S.W.2d 548, 554 (Mo.App.1999).

 The trial court determination that the children were in foster care fifteen months out of the last twenty-two months and that termination of parental rights was in the best interests of the children was supported by substantial evidence. It was not against the weight of the evidence. The trial court neither erroneously declared nor applied the law. Having determined one of the alleged bases for termination of parental rights exists and that termination of parental rights is in the best interests of the children, it is not necessary to discuss allegations in father's point on appeal that were directed to other statutory bases for terminating parental rights. The judgment is affirmed.

PREWITT, J., concurs.

RAHMEYER, J., dissents in separate opinion.

NANCY STEFFEN RAHMEYER, Judge, dissenting.

I reluctantly and respectfully dissent. A careful review of the evidence indicates there is not sufficient evidence to support the finding that it is in the children's best interest to have father's parental rights terminated. The termination of parental rights is governed by §§ 211.447–211.487 of the Missouri Revised Statutes (2000). In considering whether a parent's rights should be terminated, a court must first determine whether clear and convincing evidence indicates that one or more of the grounds for termination under § 211.447 RSMo (2000) exist. If grounds exist, the juvenile court must next determine whether the termination is in the best interests of the child. § 211.447.5, RSMo 2000; *In the Interest of C.N.W.*, 26 S.W.3d 386, 393 (Mo.App.E.D.2000). Only after both questions are resolved in the affirmative may a parent's rights be terminated.

The only testimony from the Juvenile Officer concerning the termination came from two different DFS workers. Both testified that father was generally compliant with all of the provisions of his service plan except being able to provide a stable home environment. He attended parenting classes, counseling classes, contributed to the support of the children, attempted to have visitation with both children when he was at a halfway house in Springfield, and was generally cooperative with DFS. He met the objectives of the treatment plan except he cannot provide a home at the current time because he is incarcerated.

There is no dispute that the statutory factor of the child being in foster care for fifteen of the most recent twenty-two

months was met; however, the analysis must continue. "In any proceeding for termination of parental rights, the best interests of the children are the primary concern." *In the Interest of M.R.*, 894 S.W.2d 193, 195 (Mo.App. E.D.1995). Of the most concern is that both children are in foster homes for children with behavior disorders. There was no testimony regarding the children's current needs. The only evidence that it is in the children's best interests to have father's parental rights terminated is that the DFS worker hopes the girls can be adopted. Although there was evidence that twelve-year-old C.J. has been in the same foster home for three years, there was no evidence as to future plans or current foster care placement of sixteen-year-old M.J. The two children are placed hundreds of miles from each other and appear to have no contact with each other. Each child's needs should have been considered separately.

The evidence concerning father is that he has been in prison since September 9, 1991. Because of changes in the federal courts on sentencing guidelines, his release date is uncertain; the earliest would be immediately and the latest would be April 16, 2004. While I do not diminish the seriousness of father's drug offenses, he has spent ten years in prison for his crimes. Father's witnesses were both his counselors at the halfway house where he lived pending his release. These men worked for years at the federal penitentiary prior to their employment at Alpha House. Both indicated father had matured and evolved to the point that he was ready to turn his life around. One counselor described father as having the best attitude of any person the counselor had seen in twenty-two years of working within the federal system. Father had taken responsibility for his actions and wanted to care for his family. The termination of parental rights is not a punishment for a parent,

it is for the benefit of the child. To affirm an order terminating a party's parental rights there must be clear, cogent and convincing evidence that termination is in the children's best interests. *In the Interest of W.S.M.*, 845 S.W.2d 147, 150 (Mo. App. W.D.1993). "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In Interest of J.M.*, 815 S.W.2d 97, 101 (Mo.App.1991). The evidence here does not meet that standard.

Although the goal of permanency planning for all children is worthy, before the court determines that a child shall have no legal parents, we should carefully consider each child's future. If these children were younger, in a stable home, and doing well, then perhaps the Juvenile Officer would have met his burden that termination be in the children's best interest. If the children had not already spent six years in the foster care system, apparently without success, I might be more hopeful of the "permanency planning" of adoption by someone else but, as it stands now, I see two children who have spent a good portion of their lives in foster care, being eighteen years of age and having no family. I would find that there is insufficient evidence to support the judgment and reverse the termination of father's rights.