**In the Interest of B.S.W., B.R.W. and B.J.W., children under seventeen years of age.**

**M.W. and R.A.A., Appellants,**

v.

**Greene County Juvenile Office, Respondent.**

**Nos. 24778, 24779, 24780, 25018.**

Missouri Court of Appeals, Southern District, Division Two.

March 13, 2003.

Petition for Rehearing and Transfer Denied
April 4, 2003.

Christopher A. Hazelrigg, Hazelrigg, Roberts & Easley, P.C., Springfield, for appellants.

Bill Prince, Greene County Juvenile Office, Springfield, for respondent.

JAMES K. PREWITT, Presiding Judge.

In this consolidated appeal, M.W. ("Mother") appeals from judgments terminating her parental rights to B.S.W., born September 18, 1990, B.R.W., born May 28, 1993, and B.J.W., born December 4, 1991, and R.A.A. ("Father") appeals from a judgment terminating his parental rights to B.S.W. The rights of B.R.W.'s alleged biological father are not at issue in this appeal and B.J.W.'s alleged biological father voluntarily terminated his parental rights in an earlier proceeding. With two points relied on, Mother contends that the trial court's "delay" in entering its judgment shows that it was not persuaded by the evidence and that there was not clear, cogent, and convincing evidence presented in support of several of the findings related to the grounds for termination of her parental rights under § 211.447.2, RSMo Supp.1998. Father raises one point on appeal in which he attacks several findings of the trial court, arguing that there was insufficient evidence for the trial court to find them clearly, cogently, and convincingly, and contends that therefore, the trial court erred in its determination that the termination was in the best interest of his child, B.S.W.

All three children have been under the care and custody of the Juvenile Court of Greene County and in the temporary custody of the Missouri Division of Family Services ("DFS") since October 1995 when the police found B.S.W. wandering along Glenstone Avenue in Springfield, Missouri,

wearing only her pajamas. The police had been called after a motorist witnessed the child run across the street and nearly hit her.

Based on the incident itself and unsanitary living conditions, which included the presence of dog feces and urine, the two children who were in the home, B.S.W. and B.J.W., were taken into protective custody that day. It was determined the next day that they both had severe cases of head lice. The remaining child, B.R.W., was taken into protective custody a day or so later, after it was found that he was staying temporarily with his father. DFS's investigation of the incident included a statement that Mother had not improved her lifestyle, as she had an "extensive history" with DFS under which she had received prior services from DFS based on concerns relating to inappropriate caretakers, lack of supervision of her children, and unsanitary conditions of her household and the children. All three children were adjudicated neglected, and the trial court took judicial notice of that case.

At the time of the incident, Father was incarcerated for crimes involving malicious wounding and sexual assault in West Virginia. Although he was released in December 1996, Father apparently did not immediately return to Greene County. The first treatment plan for him was in May 1998.

On February 2, 1999, petitions to terminate the parental rights of Mother and Father with respect to B.S.W., and Mother with respect to B.R.W. and B.J.W., were filed. Within all three petitions, DFS sought termination of Mother's and Father's rights based on § 211.447.2(1), RSMo Supp.1998, (children had been in foster care for at least fifteen of the last twenty-two months); § 211.447.4(2), RSMo Supp.1998, (children had been abused or neglected); and § 211.447.4(3), RSMo

Supp.1998, (children had been under the trial court's jurisdiction for a period of one year, and conditions leading to the assumption of that jurisdiction still exist or conditions of a potentially harmful nature continue to exist).

The hearing on the petitions was held in May 2000, and on January 25, 2002, the trial court entered a judgment terminating Mother's and Father's parental rights to B.S.W., and separate judgments terminating Mother's parental rights to B.R.W. and B.S.W., respectively. Considering the judgment terminating Mother's and Father's rights to B.S.W., the trial court found the following statutory grounds existed for termination:

a. [B.S.W.] has been in care fifteen of the most recent twenty[-]two months.

b. [B.S.W.] has been abandoned by the unknown biological father [not Father].

c. [B.S.W.] has been abused and neglected and adjudicated neglected.... There has been a repeated and continuous failure by the parents, although physically and financially able, to provide [B.S.W.] with adequate food, clothing, shelter or education as defined by law, or other care necessary for the child's physical, mental or emotional health and development. That [B.S.W.] and siblings have been subjected to physical, sexual and emotional abuse while in the care, custody and control of the parents and under circumstances that indicated that the parents knew or should have known of such abuse.

d. That [B.S.W.] has been under the jurisdiction of the [trial] court for a period in excess of one year and the conditions leading to the assumption

of jurisdiction by the [c]ourt continue to exist.

The trial court made findings regarding the following factors from § 211.447.6, RSMo Supp.1998:

a. The emotional ties to the birth parent. The evidence indicated that [B.S.W.] had emotional ties to [Mother] and [Father].

b. The extent to which the parents maintained regular visitation or other contact with the minor child. [Mother] and [Father] maintained consistent visitation with [B.S.W.].

c. The extent of payment by the parent[s] for the cost of care and maintenance of the minor child, when financially able to do so including the time that the minor child was in the custody of [DFS] or other child-placing agency. There was no evidence presented that [Father] provided regular or consistent support for [B.S.W.]. [Mother] provided financial and in-kind support for [B.S.W.].

d. Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent[s] within an ascertainable amount of time. The [DFS caseworker] testified that there are no possible services available that would bring about lasting parental adjustment enabling the return of [B.S.W.] to a parent within an ascertainable period of time. The [caseworker] testified that in the almost five years [B.S.W.] has been in care, every service available to aid the family was offered to the family.

e. [Father has] shown a disinterest in, and lack of commitment to, [B.S.W.]. [Mother] has been involved during the time [B.S.W.] was in care.

f. The conviction of a parent of a felony offense that the court finds is of such a nature that the children will be deprived of a stable home for a period of years. There was no evidence presented on this factor.

g. Deliberate acts of the parent or acts of another of which the parent knew that subjects the child to a substantial risk of physical or mental harm. Evidence was presented that [B.S.W.] and siblings ... were subjected to such acts while in the care, custody and control of [Mother].

Based on the factors, the trial court concluded that terminating both Mother's and Father's parental rights would be in the best interest of B.S.W.

Considering the judgment in which Mother's parental rights were terminated to B.R.W., the trial court found the following statutory grounds existed for termination:

a. [B.R.W.] has been in care fifteen of the most recent twenty[-]two months.

b. [B.R.W.] has been abandoned by the alleged biological father and the unknown biological father.

c. [B.R.W. has] been abused and neglected and adjudicated neglected.... That siblings to [B.R.W.] have been subjected to physical, sexual and emotional abuse while in the care, custody and control of [Mother] and under circumstances that indicated that [Mother] knew or should have known of such abuse.

d. [B.R.W.] has been under the jurisdiction of the [trial] court for a period of in excess of one year and the conditions leading to the assumption of jurisdiction by the [c]ourt continue to exist.

The trial court made findings regarding the following factors from § 211.447.6, RSMo Supp.1998:

a. The emotional ties to the birth parent. The evidence indicated that [B.R.W.] had emotional ties to [Mother].

b. The extent to which the parents maintained regular visitation or other contact with the minor child. [Mother] maintained consistent visitation with [B.R.W.]

c. The extent of payment by the parent for the cost of care and maintenance of the minor child, when financially able to do so including the time that the children were in the custody of [DFS] or other child-placing agency. [Mother] provided financial and in-kind support for [B.R.W.].

d. Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable amount of time. The [DFS caseworker] testified that there are no possible services available that would bring about lasting parental adjustment enabling the return of [B.R.W.] to a parent within an ascertainable period of time. The [caseworker] testified that in the almost five years [B.R.W.] has been in care, every service available to aid the family was offered to the family.

e. [Mother] has been involved during the time [B.R.W.] was in care.

f. The conviction of the parent of a felony offence that the court finds is of such a nature that the children will be deprived of a stable home for a period of years. There was no evidence presented on this factor.

g. Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm. Evidence was presented that siblings to [B.R.W.] were subjected to such acts while in the care, custody and control of [Mother].

Based on the factors, the trial court concluded that terminating Mother's parental rights would be in the best interest of B.R.W.

Considering the judgment in which Mother's parental rights were terminated to B.J.W., the trial court found the following statutory grounds existed for termination:

a. [B.J.W.] has been in care fifteen of the most recent twenty[-]two months.

b. [B.J.W.] has been abandoned by the alleged biological father and the unknown biological father.

c. [B.J.W. has] been abused and neglected and adjudicated neglected. . . . That siblings to [B.J.W.] have been subjected to physical, sexual and emotional abuse while in the care, custody and control of [Mother] and under circumstances that indicated that [Mother] knew or should have known of such abuse.

d. [B.J.W.] has been under the jurisdiction of the [trial] court for a period of in excess of one year and the conditions leading to the assumption of jurisdiction by the [c]ourt continue to exist.

The trial court made findings regarding the following factors from § 211.447.6, RSMo Supp.1998:

a. The emotional ties to the birth parent. The evidence indicated that [B.J.W.] had emotional ties to [Mother].

b. The extent to which the parents maintained regular visitation or other contact with the minor child. [Mother] maintained consistent visitation with [B.J.W.]

c. The extent of payment by the parent for the cost of care and maintenance of the minor child, when financially able to do so including the time that the children were in the custody of [DFS] or other child-placing agency. [Mother] provided financial and in-kind support for [B.J.W.].

d. Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable amount of time. The [DFS caseworker] testified that there are no possible services available that would bring about lasting parental adjustment enabling the return of [B.J.W.] to a parent within an ascertainable period of time. The [caseworker] testified that in the almost five years [B.J.W.] has been in care, every service available to aid the family was offered to the family.

e. [Mother] has been involved during the time [B.J.W.] was in care.

f. The conviction of the parent of a felony offence that the court finds is of such a nature that the children will be deprived of a stable home for a period of years. There was no evidence presented on this factor.

g. Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm. Evidence was presented that siblings to [B.J.W.] were subjected to such acts while in the care, custody and control of [Mother].

Based on the factors, the trial court concluded that terminating Mother's parental rights would be in the best interest of B.J.W.

The judgment in a termination of parental rights case will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *In re R.J.B.*, 30 S.W.3d 868, 870 (Mo.App.2000). Due deference is given to the trial court's ability to assess the credibility of the witnesses. *In re A.M.C.*, 983 S.W.2d 635, 636 (Mo.App.1999). In our review, we consider the facts and reasonable inferences therefrom in the light most favorable to the trial court's order. *R.J.B.*, 30 S.W.3d at 870.

The grounds for termination of parental rights must be shown by clear, cogent, and convincing evidence. § 211.447.5, RSMo 2000. The termination must also be in the best interest of the children. *In Interest of F.M.*, 979 S.W.2d 944, 946 (Mo.App.1998). The clear, cogent, and convincing standard of proof is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. *In Interest of C.K.G.*, 827 S.W.2d 760, 765 (Mo.App.1992). This standard of proof may be met although the trial court has contrary evidence before it. *Id.* As trier of fact, the trial court has authority to believe or disbelieve all, part or none of the testimony of the witnesses. *Id.*

Mother raises two points on appeal. In her first point she alleges that the trial court erred in entering judgment terminating her rights to the three children because the twenty-one month "delay" in entering the judgments shows that the trial

court could not have been persuaded by the evidence to the level necessary under the required standard of proof.

The only legal citation in Mother's argument recites the standard of proof outlined above, that the clear, cogent, and convincing standard of proof is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the factfinder's mind is left with an abiding conviction that the evidence is true. *In re N.M.J.*, 24 S.W.3d 771, 777 (Mo.App.2000). Beyond that citation, the remainder of Mother's argument is as follows:

> In the case at hand, [the judge] could not possibly have been left with such a conviction. Had the scales instantly tilted in favor of termination of parental rights [the judge] would not have waited to execute and file [the] order ... until Twenty[-]One Months and Eight Days after the parties rested at trial. A person who exhibits the conviction necessary to meet the burden set forth above would act quicker, more deliberate and within a reasonable period of time. Nearly two years after the trial on whether or not termination of parental rights should occur and all three children be placed for adoption is not within a reasonable time.

■ As noted, Mother provides no legal authority for her contentions, and we find none. It is the appellant's burden to develop within the argument section of the brief any contentions raised in the point relied on. *In re T.E.*, 35 S.W.3d 497, 506 (Mo.App.2001). If such contentions are not supported with relevant authority or argument beyond conclusory statements, we consider the point abandoned. *Id.* If no relevant authority exists, the appellant is required to include an explanation for the absence of citation. *In re A.M.C.*, 32 S.W.3d 155, 162 (Mo.App.2000). Based

upon Mother's violation of Rule 84.04(d), her Point I is denied. *In Interest of F.A.C.*, 973 S.W.2d 157, 160 (Mo.App.1998).

■ Mother contends in her second point, which contains 10 parts, that the trial court erred in entering judgment terminating her parental rights to B.S.W., B.R.W., and B.J.W. because the evidence at trial was insufficient to clearly, cogently, and convincingly establish any grounds for termination under § 211.447.2, RSMo Supp.1998. Mother does not challenge the trial court's findings with respect to any other statutory grounds.

In particular, Mother does not challenge the statutory ground that all three children had been in care fifteen of the most recent twenty-two months. The evidence was that B.S.W., B.R.W., and B.J.W., had been in foster care since October 1995 and that the petitions for termination of parental rights were all filed on February 2, 1999. Thus, there was no dispute that all three children had been in foster care at least fifteen of the most recent twenty-two months prior to filing of the petitions to terminate Father's parental rights. *See In Interest of K.C.M.*, 85 S.W.3d 682, 695 (Mo.App.2002).

■ Where multiple statutory bases for termination of parental rights are found, all that must be found in order to affirm the judgment is that one of the statutory grounds was proven and that termination was in the best interest of the children. *In Interest of M.J.*, 66 S.W.3d 745, 747 (Mo.App.2001). *In K.C.M.*, evidence that the child had been in foster care fifteen of the most recent twenty-two months was enough for the court to deny the mother's point in which she argued there was not clear, cogent, and convincing evidence of any of the statutory grounds used as the bases for the termination of her rights, including that K.C.M. was in

foster care fifteen of the most recent twenty-two months. *K.C.M.*, 85 S.W.3d at 695. *In M.J.*, the court determined it was unnecessary to consider the father's points alleging error on two other statutory grounds, since he did not challenge the statutory ground relating to M.J. having been in foster care for fifteen of the most recent twenty-two months prior to the filing of the petition. *M.J.*, 66 S.W.3d at 748.

Therefore, in the case at bar, we need not address Mother's second point, which alleges error with respect to the statutory ground under § 211.447.2, RSMo Supp. 1998, but does not challenge the existence of the statutory ground where B.S.W., B.R.W., and B.J.W. were all under foster care for fifteen of the most recent twenty-two months prior to the filing of petitions for termination of Mother's rights. Point II is denied.

 Father, whose parental rights to B.S.W. were terminated, raises one point on appeal in which he attacks several findings of the trial court, arguing that there was insufficient evidence for the trial court to find them clearly, cogently, and convincingly, and contends that therefore, the trial court erred in its determination that the termination was in the best interest of B.S.W.

 In addition to the requirement that the trial court find at least one statutory ground for termination, it is also necessary for the trial court to determine that the termination of rights is in the best interest of the children. *K.C.M.*, 85 S.W.3d at 695. The factors listed in § 211.447.6, RSMo 2000, are often referred to as the "best interest" factors. *Id.* at 690. As part of the court's analysis in *K.C.M.*, it concluded that for a trial court to determine whether termination was in the best interest of a child, the trial court is to consider and make findings on the appropriate and applicable factors of § 211.447.6, RSMo 2000. *Id.* at 692.

 The determination of what is in a child's best interest is an ultimate conclusion for the trial court based on the totality of the circumstances. *M.J.*, 66 S.W.3d at 749. It is the trial court's duty to weigh the evidence presented relating to best interest and we will not reweigh that evidence. *Id.* We review the trial court's determination that termination was in the best interest of a child pursuant to an abuse of discretion standard. *K.C.M.*, 85 S.W.3d at 689. The trial court abuses its discretion only when the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *In re A.S.*, 38 S.W.3d 478, 486 (Mo.App.2001).

To the extent that Father's point includes any challenge to the statutory factors that the trial court found provided the bases for termination of his parental rights, the point is denied based on the same analysis presented for Mother's second point. As the evidence shows that B.S.W. was in foster care for fifteen of the most recent twenty-two months prior to filing of the petition for termination, there is no need to address the other statutory factors. *M.J.*, 66 S.W.3d at 748.

Thus, we will address the best interest factors the trial court considered with respect to Father. The trial court found that B.S.W. had emotional ties to Father and that he had maintained consistent visitation with the child. With respect to payment for the cost of care and maintenance of B.S.W., the trial court found that there was no evidence that Father provided regular or consistent support for the child. Father was incarcerated until sometime in 1996, and B.S.W. was taken into care in October 1995. There was no

evidence that he provided any support for B.S.W. during that time or prior to his incarceration.

Part of Father's treatment plan, following B.S.W.'s placement into foster care following the 1995 incident, was for him to provide $25 per month and contribute in-kind items, when financially able. Although he made some payments, he was in arrears at the time of the hearing.

In his brief, Father notes that although B.S.W. "did suffer some health and emotional problems, there is no indication that it is due to [Father's] inability or lack of willingness to provide for the child." This leads to two more of the trial court's findings under § 211.447.6, RSMo Supp.1998, that Father has shown a disinterest in, and lack of commitment to, B.S.W., and that there were no additional services that would be likely to bring about lasting parental adjustment enabling a return of B.S.W. to Father within an ascertainable period of time.

The testimony was that when Father returned to Greene County after his incarceration, he moved in with Mother, even though the treatment plans precluded such a living arrangement. Therefore, similar to Mother, Father was less than forthcoming regarding his household situation. Father did attend counseling sessions, but one psychologist, Dr. Lester Bland, had concerns about the success of the therapy based on Father's attitude regarding his responsibility for his actions. During the parenting classes, Father slept, had occasional arguments with Mother, failed to acknowledge any possible weaknesses or deficiencies in his parenting skills, and refused to apply himself during class time. Therefore, the parent educator, Ms. Elliott–Smallwood, was concerned about his ability to apply what he learned in class outside of class.

Regarding other best interest factors, the trial court found there was no evidence presented on the conviction of Father of a felony offense that was of such a nature that B.S.W. would be deprived of a stable home for a period of years. However, on the last factor, the trial court found evidence of deliberate acts of Father or acts of another of which he knew or should have known that subjected B.S.W. to a substantial risk of physical or mental harm.

After B.S.W. was taken into protective custody in October 1995, an evaluation by Dr. Robert Murney, a clinical psychologist, showed that the child had been physically or sexually abused, and that she "lagged" developmentally. Although at the hearing Dr. Murney testified that experience in later cases caused him to now retract statements regarding B.S.W.'s sexual abuse determination, which was based strictly on psychological tests, a DFS caseworker, Ms. Cynthia Hallam, testified that DFS not only had concerns about B.S.W. being sexually abused, but that the results of the Safe Abuse Forensic Evaluation showed she had likely been assaulted on several occasions.

Given the totality of the circumstances, the trial court did not abuse its discretion in its determination that the termination of Father's parental rights to B.S.W. was in the child's best interest. Father's point is denied.

The judgment is affirmed.

RAHMEYER, C.J., and SHRUM, J., concur.