108 S.W.3d 62 (2003)
In the Interest of K.J.K. and G.T.K., Jr., children under seventeen years of age.
G.T.K., Sr., and J.L.F., Appellants,
v.
Greene County Juvenile Office, Respondent.
Nos. 25024, 25026, 25027.
Missouri Court of Appeals, Southern District, Division Two.
April 7, 2003.
Petition for Rehearing and Transfer Denied April 28, 2003.
*64 Christopher A. Hazelrigg, of Hazelrigg, Roberts & Easley, P.C., Lois M. Zerrer, Zerrer & Pruitt, LLC, Springfield, MO, for Appellants.
William Prince, Springfield, MO, for Respondent.
JAMES K. PREWITT, Presiding Judge.
In this consolidated appeal, G.T.K., Sr. ("Father") appeals from judgments terminating his parental rights to G.T.K., Jr. ("G.T.K."), born October 31, 1994, and K.J.K., born May 26, 1999, and J.L.F. ("Mother") appeals from a judgment terminating her parental rights to K.J.K. G.T.K.'s mother voluntarily terminated her parental rights, and her rights are not at issue in this appeal. With three points relied on, Father contends that there was not clear, cogent, and convincing evidence presented in support of the termination of his parental rights and that the trial court's findings in regard to the factors enumerated in § 211.447.6, RSMo 2000, were against the weight of the evidence. Mother raises one point relied on in which she attacks several findings of the trial court, arguing that there was insufficient evidence for the trial court to find them clearly, cogently, and convincingly, and contends that the trial court erred in its *65 determination that the termination was in the best interests of her child, K.J.K.
K.J.K. has been under the care and custody of the Juvenile Court of Greene County and in the temporary custody of the Missouri Division of Family Services ("DFS") since July 24, 1999, and has been adjudicated neglected and abused. G.T.K. has also been adjudicated neglected and abused, and has been under the care and custody of DFS since November 10, 1999.
On March 8, 2001, petitions to terminate the parental rights of Father with respect to K.J.K. and G.T.K., and Mother with respect to K.J.K., were filed. Within both petitions, DFS sought termination of Father's and Mother's rights based on § 211.447.2(1), RSMo 2000, (children had been in foster care for at least fifteen of the last twenty-two months); § 211.447.4(2), RSMo 2000, (children had been abused or neglected); and § 211.447.4(3), RSMo 2000, (children had been under the trial court's jurisdiction for a period of one year, and conditions leading to the assumption of that jurisdiction still exist or conditions of a potentially harmful nature continue to exist).
Following a hearing on the petitions, the trial court entered one judgment terminating Father's parental rights to G.T.K. and another judgment terminating the rights of both Father and Mother to K.J.K. Considering the judgment terminating Father's parental rights to G.T.K., the trial court found the following statutory grounds existed for termination:
a. [G.T.K.] has been in alternative care for fifteen of the most recent twenty-two months.
b. [G.T.K.] was abandoned by the unknown biological father [not Father].
c. [G.T.K.] was neglected by the fathers [Father and the unknown biological father].
d. [G.T.K.] has been under the jurisdiction of the [trial] court for in excess on one year and the conditions leading to the assumption of jurisdiction continue to exist.
The trial court made findings regarding the following factors from § 211.447.6, RSMo 2000:
a. The emotional ties to the birth parent. There was no evidence presented that [G.T.K.] had any emotional ties to [Father]. Evidence was presented that visits between [Father] and [G.T.K.] were terminated due to the adverse effect the visits were having on [G.T.K.]. Evidence was presented that [G.T.K.'s] behaviors stabilized following cessation of the visits.
b. The extent to which the parent maintained regular visitation or other contact with the minor child. [Father has] not provided payments for the care and maintenance of [G.T.K.] including the time [G.T.K.] was in the custody of [DFS]. [Father] maintained visitation with [G.T.K.] until visitation was suspended at the request of [G.T.K.'s] therapist.
c. The extent of payment by parent for the cost of care and maintenance of the minor child, when financially able to do so, including the time that the minor child was in the custody of [DFS] or other child-placing agency. [Father] did not provide financial support for [G.T.K.]. He did provide items of in-kind support for [G.T.K.].
d. Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parents within an ascertainable amount of time. [The trial court] finds that there were no *66 additional services that could be offered to [Father].
e. The parents have shown a disinterest in and a lack of commitment to the minor child. [The trial court] finds that [Father has] demonstrated a lack of commitment to [G.T.K.] by failing to make the changes necessary to provide [G.T.K.] with a safe, stable, and appropriate home environment.
Based on the factors, the trial court concluded that terminating Father's parental rights would be in the best interests of G.T.K.
Considering the judgment in which Father's and Mother's parental rights were terminated to K.J.K., the trial court found the following statutory grounds existed for termination:
a. [K.J.K.] has been in alternative care for fifteen of the most recent twenty-two months.
b. [K.J.K.] was abandoned by the unknown biological father.
c. [K.J.K.] was neglected by [Mother] and the fathers [Father and unknown biological father].
d. [K.J.K.] has been under the jurisdiction of the [trial] court for in excess of one year and the conditions leading to the assumption of jurisdiction continue to exist.
The trial court made findings regarding the following factors from § 211.447.6, RSMo 2000:
a. The emotional ties to the birth parent. There was no evidence presented that [K.J.K.] demonstrated health[y] emotional ties to [Father and Mother].
b. The extent to which the parent maintained regular visitation or other contact with the minor child. [Father and Mother] generally maintained regular visitation with [K.J.K.]
c. The extent of payment by parent for the cost of care and maintenance of the minor child, when financially able to do so, including the time that the minor child was in the custody of [DFS] or other child-placing agency. [Father and Mother] did not provide financial support for [K.J.K.]. They did provide items of in-kind support for [K.J.K.].
d. Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parents within an ascertainable amount of time. [The trial court] finds that there were no additional services that could be offered to [Father and Mother].
e. The parents have shown a disinterest in and a lack of commitment to the minor child. [The trial court] finds that [Father and Mother] have demonstrated a lack of commitment to [K.J.K.] by failing to make the changes necessary to provide [G.T.K.] with a safe, stable, and appropriate home environment.
Based on the factors, the trial court concluded that terminating Father's and Mother's parental rights would be in the best interests of K.J.K.
The judgment in a termination of parental rights case will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. In the Interest of R.J.B., 30 S.W.3d 868, 870 (Mo.App. 2000). Due deference is given to the trial court's ability to assess the credibility of the witnesses. In the Interest of A.M.C., 983 S.W.2d 635, 636. In our review, we consider the facts and reasonable inferences therefrom in the light most favorable *67 to the trial court's order. R.J.B., 30 S.W.3d at 870.
The grounds for termination of parental rights must be shown by clear, cogent, and convincing evidence. § 211.447.5, RSMo 2000. The termination must also be in the best interests of the children. In the Interest of F.M., 979 S.W.2d 944, 946 (Mo.App.1998). The clear, cogent, and convincing standard of proof is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. In the Interest of C.K.G., 827 S.W.2d 760, 765 (Mo.App.1992). This standard of proof may be met although the trial court has contrary evidence before it. Id. As trier of fact, the trial court has authority to believe or disbelieve all, part or none of the testimony of the witnesses. Id.
As indicated earlier, Father raises three points on appeal. In his first two points, he alleges trial court error with respect to two of the statutory grounds used as bases for termination of his rights to G.T.K. and K.J.K. He argues there was not clear, cogent, and convincing evidence that he neglected his children and that conditions that led to the assumption of jurisdiction still exist with little likelihood those conditions will be remedied at an early date.
Father does not challenge the remaining statutory ground related to him: that G.T.K. and K.J.K. had been in foster care for at least fifteen of the last twenty-two months. The evidence was that K.J.K. had been in foster care continually since July 24, 1999, and G.T.K. since November 10, 1999. Petitions in both cases were filed March 8, 2001. Thus, both K.J.K. and G.T.K. had been in foster care at least fifteen of the most recent twenty-two months prior to filing of the petitions to terminate Father's parental rights. See In the Interest of K.C.M., 85 S.W.3d 682, 695 (Mo.App.2002).
Where multiple statutory bases for termination of parental rights are found, all that must be found in order to affirm the judgment is that one of the statutory grounds was proven and that termination was in the best interests of the children. In the Interest of M.J., 66 S.W.3d 745, 747 (Mo.App.2001). In K.C.M., evidence that the child had been in foster care fifteen of the most recent twenty-two months was enough for the court to deny the mother's point in which she argued there was not clear, cogent, and convincing evidence of any of the statutory grounds used as the bases for the termination of her rights, including that K.C.M. was in foster care fifteen of the most recent twenty-two months. K.C.M., 85 S.W.3d at 695. In M.J., the court determined it was unnecessary to consider the father's points alleging error on two other statutory grounds, since he did not challenge the statutory ground relating to M.J. having been in foster care for fifteen of the most recent twenty-two months prior to the filing of the petition. M.J., 66 S.W.3d at 748.
Therefore, in the case at bar, we need not address Father's first two points, which allege error with respect to two of the statutory grounds for termination, but do not challenge the existence of the statutory ground under which K.J.K. and G.T.K. were both under foster care for fifteen of the most recent twenty-two months prior to the filing of petitions for termination of Father's rights. Points I and II are denied.
Before addressing Father's third point, we note that the above analysis of his first and second points should not be taken to imply that in every case in which a child has been in foster care fifteen of the most *68 recent twenty-two months an appeal challenging the statutory grounds for termination is absolutely barred. That is a question we need not decide under the facts of this case.
In Father's third point, he contends that the trial court erred in terminating his parental rights to K.J.K. and G.T.K. because the trial court's findings with regard to the factors enumerated in § 211.447.6, RSMo 2000, were against the weight of the evidence. As noted earlier, there is a two-step process involved in the termination of a parent's rights. In addition to the requirement that the trial court find at least one statutory ground for termination, it is also necessary for the trial court to determine that the termination of rights is in the best interests of the children. K.C.M., 85 S.W.3d at 695.
The factors listed in § 211.447.6, RSMo 2000, are often referred to as the "best interest" factors. Id. at 690. As part of the court's analysis in K.C.M., it concluded that for a trial court to determine whether termination was in the best interests of a child, the trial court is to consider and make findings on the appropriate and applicable factors of § 211.447.6, RSMo 2000. Id. at 692. Thus, Father's Point III is essentially an argument that the trial court erred in its determination that the termination of Father's rights was in the best interests of K.J.K. and G.T.K. See id.
The determination of what is in a child's best interests is an ultimate conclusion for the trial court based on the totality of the circumstances. M.J., 66 S.W.3d at 749. It is the trial court's duty to weigh the evidence presented relating to best interests and we will not reweigh that evidence. Id. We review the trial court's determination that termination was in the best interests of a child pursuant to an abuse of discretion standard. K.C.M., 85 S.W.3d at 689. The trial court abuses its discretion only when the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. In the Interest of A.S., 38 S.W.3d 478, 486 (Mo.App. 2001).
Here, the trial court found that, with regard to both G.T.K. and K.J.K., there was no evidence of healthy emotional ties between the children and Father. With regard to G.T.K., the trial court found that visits were terminated due to the adverse effect they were having on the child. The trial court further found that G.T.K.'s behavior stabilized following cessation of the visits.
Sara Hollis, a clinical psychologist, testified that in her observations of visits between Father and G.T.K., Father used inappropriate language and appeared to make G.T.K. feel insecure and as if G.T.K. "couldn't do things very well." Hollis also testified that she moved the day of the visitations, based on G.T.K.'s foster parents expression of frustration that G.T.K. would be "out of control" following the visits and that it would take him several days to settle down. This move allowed Hollis to observe any changes in G.T.K.'s behavior related to the visits. Hollis noticed G.T.K.'s behavior after the visitations was aggressive, hostile, and negative, prompting her to ask for a temporary suspension of the visits.
The same extent of behavioral difficulties was not experienced by K.J.K. after visits with Father. However, Debra Strait, who had worked with families whose children had been placed in alternative care, testified that she observed no emotional bond or ties between Father and either child.
Another finding of the trial court was that Father generally maintained regular *69 visitation with G.T.K. and K.J.K., except for when it was suspended with respect to G.T.K. The trial court also found that although Father occasionally provided in-kind support for the children, he did not provide financial support for them, even though Father was employed during at least part of the time that his children were in foster care.
As to whether any additional services could be provided to Father that would be likely to bring about lasting parental adjustment enabling a return of the children to Father within an ascertainable time, the trial court found that there were no such additional services. Ms. Strait testified that given the way the case progressed, there were no other additional services available. Tara Taylor, an alternative case worker for DFS, had the same assessment.
There was testimony that Father was not fully cooperative with DFS and not in complete compliance with his treatment plan. At times, he failed to inform DFS of the composition of his household, including when Mother resided in his household and when several of his daughter's friends were living there. Father also was not forthcoming regarding being arrested for reckless driving. In addition, DFS staff often bore the brunt of Father's temper, and Father at one point threatened to kill a juvenile officer. Father did complete an anger management program, as well as a parenting class, but he failed to provide verification of his attendance at required counseling sessions and the therapist informed DFS that Father's attendance was inconsistent. Father testified that, after completing the anger management program, the only anger he felt was when he had to deal with staff at DFS. Father also failed to comply with one requested drug test.
The trial court also found that Father had shown a disinterest in and lack of commitment to G.T.K. and K.J.K. According to the trial court, Father demonstrated this lack of commitment by failing to make the changes necessary to provide G.T.K. and K.J.K. with a safe, stable, and appropriate home environment. There was testimony regarding what the trial court termed a household that was "chaotic in nature." On occasion, there were several unrelated individuals living in the home, some of whom Father only knew as friends of his daughter. During one of these occasions, his daughter and an unrelated male were involved in an assault that occurred at the home.
Based on the totality of the circumstances, the trial court did not abuse its discretion in its determination that the termination of Father's rights was in the best interests of G.T.K. and K.J.K. Father's Point III is denied.
Mother, whom we recall is the mother of K.J.K., raises one point on appeal in which she contends that the trial court erred in its determination that the termination of her rights was in the best interests of K.J.K. Our standard of review and approach is the same as it was for Father's Point III, in that the determination of what is in a child's best interests is an ultimate conclusion for the trial court based on the totality of the circumstances and we apply an abuse of discretion standard. M.J., 66 S.W.3d at 749; K.C.M., 85 S.W.3d at 689.
To the extent that Mother's point includes any challenge to the statutory factors that the trial court found provided the bases for termination of her parental rights, the point is denied based on the same analysis presented for Father's first two points. As the evidence shows that K.J.K. was in foster care for fifteen months of the most recent twenty-two prior to filing of the petition for termination, *70 there is no need to address the other statutory factors. M.J., 66 S.W.3d at 748.
Returning to the analysis of the trial court's best interests determination, the trial court referenced similar findings under the factors of § 211.447.6, RSMo 2000, for Mother as it did for Father. The trial court found that there was no evidence that K.J.K. demonstrated any healthy emotional ties to Mother. Ms. Strait testified that she did not observe a bond between Mother and K.J.K.
Regarding visitation, the trial court found, and testimony was such, that Mother generally maintained regular visitation with K.J.K. However, Judy Rowden, a resource coordinator at DFS, and Ms. Strait testified that there were four occasions during which Mother appeared and acted as if she were intoxicated.
The trial court found that although Mother occasionally provided in-kind support for K.J.K., she never provided any financial support. Ms. Strait testified that there were two or three times that Mother brought K.J.K. some sort of toy or clothing.
As for additional services, the trial court found that there were none that could be offered to Mother that would be likely to bring about lasting parental adjustment enabling a return of K.J.K. to Mother within an ascertainable period of time. The record shows that Mother suffered from a depressive disorder and alcohol dependence. The trial court found that, with regard to Mother's chemical dependency, she had been referred to treatment on several occasions, but was discharged due to noncompliance.
The testimony was that Mother was not fully compliant with her treatment plan. In addition to unsuccessful completion of substance abuse treatment, although Mother attended parenting classes, it was determined that she did not successfully complete them; however, Mother did not take the course again. Mother also did not consistently or timely inform DFS of her whereabouts or living arrangements.
The trial court also found that Mother had demonstrated a disinterest in and lack of commitment to K.J.K. Other than the substance abuse issue and lack of success in addressing it, there was testimony that Mother had been arrested for assaulting one of Father's daughters.
Given the totality of the circumstances, the trial court did not abuse its discretion in its determination that the termination of Mother's parental rights to K.J.K. was in the child's best interests. Mother's point is denied.
The judgment is affirmed.
RAHMEYER, C.J., and SHRUM, J., concur.