In Interest of S.J.G., a minor child,

STATE of Missouri, Respondent,

v.

M.J.G. and T.P.G., Appellants.

Nos. 18693, 18714.

Missouri Court of Appeals,
Southern District,
Division One.

March 11, 1994.

James K. Justus, Forsyth, for appellant M.J.G.

Randy S. Anglen, Branson, for appellant T.P.G.

Ronald S. Wampler, Juvenile Officer, Ozark, for respondent.

PARRISH, Chief Judge.

M.J.G. (mother) and T.P.G. (father) each appeal from a judgment terminating their parental rights to S.J.G. No. 18693 is mother's appeal and No. 18714 is father's appeal. This court affirms.

The juvenile officer of Taney County, Missouri, filed a petition seeking termination of parental rights of both mother and father on August 4, 1992, as permitted by § 211.447, RSMo Supp.1991. A guardian ad litem was appointed to represent the child and attorneys were appointed to represent mother and father, respectively. The trial court directed the Missouri Division of Family Services (DFS) to prepare and file a social investigation report pursuant to § 211.455.3, RSMo 1986. The report was filed with the trial court November 3, 1992.[1] The case was tried February 18, 1993, and taken under advisement. On February 22, 1993, the trial court granted the petition for termination of parental rights as to both mother and father.

Appellate review of juvenile proceedings is in the nature of appellate review of

---

1. Mother and father, by separate motions that this court took with the case, objected to the social investigation report that was tendered to this court as a "Legal File Supplement" being filed. Mother objected to the legal file supplement being filed because the social report "was not offered into evidence" in the trial court. Father objected because the report "was not judicially noticed or offered into evidence." Section 211.455.3, RSMo 1986, requires that the trial court "order an investigation and social study." It further requires, "[A] written report shall be made to the court to aid the court in

determining whether the termination is in the best interests of the child." *Id.* The report was timely filed in the trial court. It was not required to be formally admitted into evidence or judicially noticed in order to be considered. The attorneys for mother and for father requested copies of the report from the trial court. There is no indication that copies were not provided. The record on appeal does not disclose that either attorney moved to strike any part of the report or objected to its form or content. The objections to the legal file supplement are denied and the request that it be filed is granted.

court-tried civil cases. *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 698 (Mo.App.1984). The trial court's order is the judgment from which this appeal was taken. Section 211.-261, RSMo 1986; Rule 120.01. As such, it "will be sustained ... unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court "shall view the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order." *In Interest of M.L.K.*, 804 S.W.2d 398, 400 (Mo.App.1991).

*In Interest of L.W.*, 830 S.W.2d 885, 886 (Mo.App.1992).

■ The petition for termination of parental rights alleged various statutory bases for seeking termination in this case and the trial court found more than one basis for granting the remedy sought. This court, however, is mindful that "[t]he existence of but one of the statutory grounds is sufficient for termination of parental rights if that result would be in the best interests of the child." *In Interest of M.H.*, 859 S.W.2d 888, 895 (Mo. App.1993).

Father and mother each set forth five points on appeal. Three of father's points are directed to the trial court's finding of abandonment. One is directed to the trial court's finding that there had been a prior adjudication of neglect and abandonment that resulted in S.J.G. being placed in foster care subject to court supervision and that the reasons for that exercise of jurisdiction had not been alleviated. The fifth is directed to the trial court's determination that it was in the best interests of S.J.G. to terminate father's parental rights.

Two of mother's points are directed to the finding of abandonment. Two are directed to the finding of a prior adjudication of abuse or neglect and the determination that the cause therefor had not been alleviated. Mother's fifth point is directed to the trial court's finding that termination of her parental rights was in the best interests of the child.

Rule 84.04(d) states the requirements for "points relied on" in appellate briefs:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder.

.    .    .    .    .

Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

■ In *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), the court said:

[C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. The requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

*Id.* at 685. Three things are required: "(1) a statement of the action or ruling of the trial court about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement informing the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken." *Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App. 1990).

■ None of father's points on appeal comply with the requirements of Rule 84.-04(d). They fail to state "wherein and why" father contends the trial court erred. Three of mother's points likewise fail because they do not comply with the requirements that "wherein and why" the trial court erred must be stated. Arguably, mother's Points II and III comply with the mandates of Rule 84.-04(d). Those points are directed to the trial

court's determination that grounds for termination of mother's parental rights exist because there was a prior adjudication of abuse and neglect that had not been rectified.

■ Points on appeal that fail to comply with Rule 84.04(d) present nothing for review. *In Interest of J.L.C.,* 844 S.W.2d 123, 126 (Mo.App.1992). Nevertheless, this court may look to the argument portions of the briefs in order to determine "whether there has been plain error affecting substantial rights which, though not properly preserved, may have resulted in a manifest injustice or a miscarriage of justice." *Hoffman v. Koehler,* 757 S.W.2d 289, 292 (Mo.App.1988); Rule 84.13(c).

■ The authority to terminate parental rights has frequently, and accurately, been called an awesome power. *E.g., see In Interest of N.D., N.E.D. and V.D.,* 857 S.W.2d 835, 840 (Mo.App.1993); *In Interest of W.F.J.,* 648 S.W.2d 210, 214 (Mo.App.1983). For that reason this court will review the question of whether the trial court committed plain error in finding that mother and father abandoned S.J.G.

The trial court found:

The natural parents, [T.P.G.] and [M.J.G.] have abandoned their daughter [S.J.G.] for a period of time of six (6) months or longer, prior to the filing of this petition, in the following respects, among others, to-wit: both parents have failed to visit with or communicate with [S.J.G.]. Neither parent has seen [S.J.G.] since prior to [a prior] termination proceeding. Neither parent has a valid excuse for failing to visit or communicate with their daughter. [T.P.G.] acknowledges that his so-called "bond agreement" did not prevent contact with [S.J.G.]. Neither parent testified as to any cards or letters that they had sent to [S.J.G.]. Both parents have been able to provide [S.J.G.] with support. [T.P.G.] testified that he was earning enough money to support himself, his new wife and [S.J.G.], and that he had the ability to pay his own attorney fees. However, since September, 1991 he has contributed no money towards [S.J.G.'s] support. [M.J.G.] has been employed on a

sporadic basis and has been able to pay $200.00 per month for the support of two of her other children in the State's custody, but has contributed nothing towards [sic] [S.J.G.'s] support since September, 1991.

The trial court further found "[t]hat the best interests of [S.J.G.] require termination of parental rights."

Section 211.447.2, RSMo Supp.1991, provides, in pertinent part:

The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer for a child over one year of age or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition:

(a) The parent has left the child under such circumstances that the identity of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child; or

(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so;

. . . . .

### No. 18693

The evidence is uncontroverted that mother paid no support for [S.J.G.] from October 1989, until the date of trial, February 22, 1993. She attempts to avoid the consequences of this failure by contending it was justified because of what she characterizes as "distressed financial circumstances."

Mother was employed for six months during 1991 and 1992. She received unemployment compensation for three months in 1992. She was previously employed by Warrens-

burg Inn from March 1, 1990, until March 10, 1991, when her fourth child was born—she has two daughters older than S.J.G. who are in foster care in Johnson County, Missouri. Her last job was at a Hardee's restaurant in Warrensburg.

D.W. is the father of mother's other three children. He is employed as the assistant manager at the Hardee's restaurant where mother worked for a short time. She and D.W. pay $200 per month child support for their two daughters who are in foster care in Johnson County.

Mother relies on *In Interest of W.F.J.,* *supra,* as authority for her claim that her unfavorable financial circumstances should obviate the requirements of § 211.447.2(1)(b), RSMo Supp.1991, that she provide parental support in order to avoid termination of her parental rights. Her reliance on *W.F.J.* is misplaced. *W.F.J.* did not involve a determination of what financial support a parent was required to provide. The petition to terminate parental rights in that case did not allege abandonment as a grounds for termination. The court held that since abandonment was not pleaded, the trial court could not terminate parental rights on that basis.

■ A parent who lacks the ability to fully support a child but has the ability to make minimal contributions for their support has a duty to do so. *See In Interest of M.L.K.,* 804 S.W.2d 398 (Mo.App.1991). "[E]ven a minimal contribution evinces the parent's intent to continue the parent-child relationship." *Id.* at 402. Furthermore, "in the absence of evidence that [mother] was incapable of employment, she can be considered financially able to support her children who are in the custody of DFS." *R.L.P. v. R.M.W.,* 775 S.W.2d 167, 171 (Mo.App.1989). *See also In Interest of R.E.C.,* 716 S.W.2d 879, 883–84 (Mo.App.1986). The trial court's finding that mother, without good cause, left S.J.G. without any provision for parental support is supported by substantial evidence and is not against the weight of the evidence.

Likewise, the trial court's determination that mother failed to make arrangements to visit or communicate with S.J.G. although able to do so is supported by substantial evidence and is not against the weight of the

evidence. Mother had not visited S.J.G. since September 17, 1991. She had not communicated with the child by letter or telephone. She sent no gifts to the child.

The trial court's determination that mother abandoned S.J.G. is supported by substantial evidence and is not against the weight of the evidence. The trial court did not erroneously declare or apply the law in finding mother abandoned S.J.G. It committed no error, plain or otherwise, in finding abandonment by mother.

### No. 18714

■ Father has not visited S.J.G. since January 16, 1991. He has paid no child support since S.J.G. was placed in foster care. Father argues that he was prevented from visiting with S.J.G. by the terms of a bail bond that secured his release from a criminal charge of sexual abuse of two juveniles—he was not charged with sexually abusing S.J.G. He testified that a condition of the bond was that he stay away from the "victims" and from family members. He contended that DFS workers interpreted the prohibition as applying to S.J.G. and that they suggested he get it changed. Father testified that he called his attorney and asked this to be done; that he "contacted several people" but did not hear anything back.

There had been a prior termination of parental rights case against father. The condition of the bail bond was brought up at that time. It was before the same trial judge. During this proceeding the following colloquy occurred:

THE COURT: After that second—I mean after that first termination proceeding was found in your favor, did you, as an example, talk to Mr. Scofield [deputy juvenile officer] about contact with your daughter?

THE WITNESS [Father]: No, sir, I did not. During the court the bond had been brought up, and you said that you didn't see any problem with me seeing my daughter due to that bond, and when I talked to Laura [DFS employee] about me seeing my daughter she told me that my

bond would get me thrown in jail, and that if I wanted to see her, I had to get papers signed by proper authorities to be able to see her.

. . . . .

THE COURT: And, you're saying that you heard me say that that bond didn't prohibit you from seeing your daughter?

THE WITNESS: Yes, sir.

THE COURT: And, it doesn't, does it?

THE WITNESS: No, it doesn't, but Laura, you know, threatened to have me thrown in jail if I come out there to see my daughter, and I was worried about going back to jail.

The trial judge then inquired about support:

THE COURT: All right. Now, since that last termination hearing that we had, have you provided any monetary, money support for your daughter, [S.J.G.]?

THE WITNESS [Father]: No, sir, I have not.

THE COURT: All right. Mr. Anglen [father's attorney] asked you some questions about your business, and you said you were doing real well and you could support yourself and your wife and your daughter.

THE WITNESS: —Yes, sir.—

Father further testified, in response to the trial judge's question, that, if he had to, he was able to pay his attorney's fees.

The trial court had substantial evidence that, for a period of more than six months before the petition to terminate parental rights was filed, father, without good cause, left S.J.G. without any provision for parental support and did not make arrangements to visit or communicate with her, although he was able to do so. The trial court's findings with respect to abandonment are not against the weight of the evidence. It did not, in finding father abandoned S.J.G., misstate or misapply the law. The trial court committed no error, plain or otherwise, in finding abandonment by father.

### Disposition of Appeals

Having determined that one statutory basis the trial court found for terminating parental rights exists, it is not necessary to consider father's or mother's challenges based on other statutory grounds. *In Interest of M.H., supra.* The remaining question is whether the terminations were in the best interests of S.J.G. "The primary concern in any termination of parental rights is the best interests of the child." *In Interest of M.L.W.,* 788 S.W.2d 759, 762 (Mo.App.1990).

■ Mother has had considerable involvement with the juvenile court with respect to her other older children—both were in foster care at the time of the trial in this case. Thus, three of her four children have required foster care placements. Further, the evidence adduced shows no effort was made by mother to regain the custody of S.J.G. after she was placed in foster care. No likelihood was shown that mother would regain custody and provide a meaningful environment for S.J.G. if parental rights were not terminated.

Father, although financially more capable than mother, likewise made no effort to regain custody of S.J.G. He did not demonstrate the desire nor fortitude required to regain custody of his child and to provide meaningful care for her.

S.J.G. is of the age that she should be readily adoptable. By terminating parental rights, the strong possibility exists that a permanent relationship may be found for S.J.G. There is the considerable likelihood that the lack of permanence of S.J.G.'s early environment will be supplanted, through adoption, with the type of childhood that is wished for all children from troubled homes. The trial court's termination of parental rights of mother and father was in the best interests of S.J.G. That judgment is affirmed in No. 18693 and No. 18714.

SHRUM and MONTGOMERY, JJ., concur.