99 S.W.3d 534 (2003)
In the Interest of D.C.S., D.E.S, Jr., M.J.S. and Z.N.S.
No. WD 61838.
Missouri Court of Appeals, Western District.
March 18, 2003.
*535 Bradley P. Grill, Kansas City, for Appellant.
Mark A. Hubbard, Platte City, for Respondent.
RONALD R. HOLLIGER, Presiding Judge.
A.P.S., mother, appeals the termination of her parental rights regarding her four children, D.C.S, D.E.S, Jr., M.J.S., and Z.N.S. In the proceedings below, the parental rights of the putative fathers (D.E.S, D.E.S., Sr., R.M.C., and John Doe) of the children were also terminated, but those terminations have not been appealed.
Grounds were found to terminate Mother's parental rights to Z.N.S. under section 211.447.2(1), RSMo, 2000,[1] as the child had been in foster care for fifteen of the previous twenty-two months. With regard to all of the children, grounds to terminate were also found under section 211.447.4(3), RSMo, which provides grounds for termination when the children have been under the jurisdiction of the court for over one year and the parent has failed to rectify harmful conditions that prevent reunification. The juvenile court also found that termination was in the best interests of all of the children.
We conclude that the juvenile court failed to make sufficient findings with regard to the statutory grounds for termination under section 211.447.4(3) with regard to all four children. We reverse the judgment with regard to the three eldest children, D.C.S., D.E.S, Jr., and M.J.S. We affirm the judgment for termination of Mother's parental rights with regard to Z.N.S., the youngest child, as it contains an additional, undisputed ground; and there was substantial evidence to support the juvenile court's findings that termination of parental rights was in that child's best interests.

Factual and Procedural Background
In December 2000, Z.N.S., then an infant under the age of one came into the custody of the juvenile court pursuant to allegations that the child had suffered rapid weight loss and severe dehydration without medical explanation while in the Mother's care. At trial, those allegations were substantiated, and the juvenile court found that the child had been abused or neglected in a judgment issued February 5, 2001. In its judgment, the juvenile court concluded that Z.N.S. was in need of care and treatment under court supervision for two reasons:
1) That Z.N.S. was hospitalized during the period 12/2/00-12/8/00 and again on 12/14/00, due to "dehydration, failure to thrive and ... significant weight loss while in the family home."
2) That Dr. Bruce Peters, made a written statement on 12/21/00 indicating that Z.N.S. was suffering from "severe hypernatrenic dehydration" with no physiological or medical explanation, and that this was highly suspicious *536 of neglect, "including the possibility of withholding food or fluids and/or adding salt to the diet to cause the rapid demise of the patient."
The remaining children were subsequently placed under the jurisdiction of the juvenile court in March 2001, on the basis of the judgment in the Z.N.S. matter. At that point, the older three children were left in the custody of Mother and D.E.S. Sr.
Mother had a long history of psychological difficulties. There was evidence admitted at trial that she suffered from major depression, anxiety disorder, borderline personality disorder, and narcissistic personality disorder. Her mental health history also included at least one suicide attempt.
On March 29, 2001, Mother was admitted for inpatient psychiatric treatment. The following day, D.E.S., Sr., asked that D.E.S., Jr., be placed in custody of the Division of Family Services ("DFS") due to "severe behavioral problems." As a result, he was placed in foster care. In April, the juvenile court reviewed the placement and concluded that D.E.S., Jr., could not be returned to the home due to the parents' failure to make sufficient progress in individual counseling and parenting classes and their inability to control D.E.S., Jr., due to his behavioral problems.
At that point, the two remaining children, D.C.S. and M.J.S., still remained in the custody of Mother and D.E.S., Sr. Those children were taken into DFS custody in May 2001 because Mother had administered Tylenol to D.C.S. in an attempt to control a fever the child was having. That action violated a medication agreement that prohibited her from providing medications to the children without prior DFS approval.
While the children were under the jurisdiction of the juvenile court, Mother entered into the first written service agreement with DFS. Among the services Mother agreed to participate in were: (1) attending DFS meetings and visitation sessions; (2) obtaining psychiatric help on an "as needed" basis; (3) attending counseling every other week; (4) submitting to drug screens; and (5) attending parenting classes. Mother had an inconsistent record of participation in those services. In some months, Mother would participate more actively and successfully; in others, Mother would fail to attend classes or attend therapy.
Mother's conduct also interfered with her continuing contact with the children. During a visitation session in October 2001, Mother became violent, striking a DFS worker and her supervisor, while attempting to forcibly take the children with her. As a result, the juvenile court suspended Mother's visitation, which was not reinstated until April 2002.
The Juvenile Officer filed a petition to terminate the parental rights of Mother and the putative fathers to the children on May 4, 2002. That petition alleged that grounds existed to terminate parental rights to Z.N.S. on the basis that she had been in foster care for fifteen of the last twenty-two months. It further alleged that grounds were present to terminate parental rights to all of the children under the "failure to rectify" provisions of section 211.447.4(3), RSMo. In addition to the grounds for termination, the petition alleged that termination was in the best interests of the children, given the lack of bonding with the parents.
At the conclusion of trial, the juvenile court made the following findings regarding the failure to rectify ground for termination:
22. That pursuant to Section 211.447.4(3) RSMo., the children have *537 been under the jurisdiction of the Court for more than one year and conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the children can be returned to the parents in the near future. Further, the continuation of the parent-child relationship greatly diminishes the children's prospects for early integration into a stable and permanent home and:
i. Pursuant to Section 211.447.4(3)(a) RSMo., [Mother] has made little progress in complying with the terms of the social service plans entered into by [Mother] and the Division of Family Services.
* * *[2]
iv. Pursuant to Section 211.447.4(3)(b) RSMo., the efforts of the juvenile officer, Division of Family Services and other agencies to aid the parent on a continuing basis in adjusting [Mother's] circumstances or conduct to provide a proper home for the children have failed, due to [Mother's] refusal and lack of cooperation in that:
a) [Mother] has failed to conduct herself in such a manner that would allow her contact and visitation with the juveniles by assaulting the supervising authority during a visitation.
b) [Mother] has failed to consistently participate in individual counseling.
c) [Mother] has failed to consistently submit to drug screens and blood tests as requested. That drug screen results have indicated that [Mother] has used drugs that were not prescribed for her.
d) [Mother] has failed to consistently attend and complete a parenting class.
e) [Mother] has failed to benefit from services provided by a parent aide, and said services were unsuccessfully terminated by the parent aide.
f) [Mother] has failed to provide financially for the juveniles.
g) [Mother] has failed to maintain stable and independent housing to be able to care for and support the juveniles.
* * *
vii. That there was no evidence presented that the Respondent, [Mother], has a mental condition which was shown by competent evidence to be either be permanent or such that there was no reasonable likelihood that the condition would be reversed and which rendered her unable to knowingly provide the juveniles, [DCS, DES Jr., MJS, and ZNS], the necessary care, custody and support.
* * *
x. That there was no evidence presented that the Respondent, [Mother], has a chemical dependency which cannot be treated and which prevents her from consistently providing the necessary care, custody, and control of the juveniles, [DCS, DES Jr., MJS, and ZNS].
Mother now appeals from the judgments as to each child.

Discussion
In determining whether the termination of parental rights is appropriate, *538 the trial court is required to engage in a two-stage analysis. In the first stage, the trial court must find grounds to terminate parental rights. Given the nature of the rights at stake, the trial court must first conclude that a ground for termination has been proven by clear, cogent, and convincing evidence. In the Interest of C.M.M., 757 S.W.2d 601, 604 (Mo.App.1988). "Clear, cogent, and convincing evidence" is evidence which instantly tilts the balance in favor of termination, when weighed against the evidence presented by the parent whose rights were terminated. In re A.R., 52 S.W.3d 625, 633 (Mo.App.2001).
We review the trial court's findings on that first step and determine whether clear, cogent, and convincing evidence supports the finding of grounds for termination under the Murphy v. Carron, 536 S.W.2d 30 (Mo. banc. 1976) standard of review. In re N.M.J., 24 S.W.3d 771, 777 (Mo.App.2000); In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984). We may only reverse the trial court if we conclude that the judgment is unsupported by substantial evidence, is against the weight of the evidence, or that it erroneously declares or applies the law. In re A.S.O., 52 S.W.3d 59, 63 (Mo.App.2001).
Only after the trial court concludes that a ground for termination has been proven by clear, cogent, and convincing evidence, may it progress to the second stage of the analysis. In that stage, the trial court must determine whether termination of parental rights is in the child's best interest even though a legal ground for termination has been proven. We review the trial court's findings in this second step of the analysis under an abuse of discretion standard. In re A.S., 38 S.W.3d 478, 486 (Mo.App.2001)
Mother presents one point on appeal. She contends that the trial court erred in terminating her parental rights because there was not clear, cogent, and convincing evidence that she had failed to make progress in coping with her mental condition and in providing a safe and stable home for her children. Neither her point on appeal nor her argument clearly identifies at which point the juvenile court erred. As such, it is unclear whether Mother is challenging the juvenile court's determination that grounds existed for termination of her parental rights or its finding that termination was in the children's best interest.
Clearly, Mother's appeal does not contest the juvenile court's finding of grounds to terminate parental rights to Z.N.S., the youngest child, under section 211.447.2(1). Instead, her arguments apply only to the "failure to rectify" grounds for termination under section 221.447.4(3), RSMo. As will be seen, this necessitates a different disposition of the case with regard to the youngest child as opposed to the three eldest children.
Under section 221.447.4(3), RSMo, grounds for termination exist when a child has been under the custody of the court in excess of a year and either the reasons for the original assertion of jurisdiction over the child continue to exist or a potentially harmful condition persists that bars reunification in the reasonably foreseeable future. Here, the judgment recites only that "conditions of a potentially harmful nature continue to exist," without actually articulating what those conditions are. That lack of specificity impedes our ability to properly review the juvenile court's judgment. See In re C.N.G., 89 S.W.3d 564, 567 (Mo.App.2002). This omission is important. Our review of the record does not suggest what "conditions of a potentially harmful nature continue to exist." At oral argument, the attorney for the juvenile officer asserted that one of the conditions was the failure of Mother to *539 comply with the written services agreement. We categorically reject the contention that non-cooperation with DFS is a "condition" that itself justifies termination of parental rights. Likewise, we reject the juvenile officer's argument that the original condition or circumstances that led to the assumption of jurisdiction is sufficient to terminate without a showing that that condition continues to exist at the time of the termination hearing.
We also observe that the judgment is also inadequate in its findings under section 211.447.4(3)(a), RSMo. That section requires the juvenile court to make findings with regard to the social service plans Mother entered into and the extent of Mother's compliance with those plans. Without more we cannot evaluate whether the terms of the service plans have any relationship to the harmful conditions that the court believes prevent the return of the child to the parent in the near future. As stated above, the judgment below recites only that Mother had made "little progress" in complying with the social service plan, but does not provide specifics. "While the trial court is not required to quote verbatim in its judgment the terms of the plan, the court is required to make findings which sufficiently identify the plan and the terms thereof." In re A.A.R., 39 S.W.3d 847, 852 (Mo.App.2001). Here, the trial court has failed to make those findings.
In the absence of any finding by the trial court as to what was the "potentially harmful condition" that precluded reunification and specific findings under section 211.447.4(3)(a), RSMo, we must reverse the judgment with regard to the three oldest children, D.C.S., M.J.S., and D.E.S., Jr., for the entry of additional findings under section 211.447.4(3). If, on remand, the juvenile court cannot identify the "potentially harmful condition" that Mother has failed to rectify, it cannot proceed to terminate Mother's parental rights under section 211.447.4(3). Similarly, it must also articulate the extent (or lack thereof) of Mother's progress in complying with the social service plan, especially to the extent that the services in question were directed towards remedying the underlying harmful condition.
With regard to the youngest child, Z.N.S., the judgment also has the same infirmities with regard to the statutory findings under section 211.447.4(3), RSMo. However, the judgment sets forth an undisputed, independent ground for termination of Mother's parental rights regarding that child under section 211.447.2(1), RSMo, as the child had been in foster care for fifteen of the prior twenty-two months. Where multiple grounds are found for termination, we will affirm if any one of those grounds is sustainable and termination lies in the child's best interests. M.J. v. Greene County Juvenile Officer, 66 S.W.3d 745, 747 (Mo.App.2001). Given that Mother does not challenge the juvenile court's finding that there are grounds for termination of her parental rights to Z.N.S. under section 211.447.2(1), we must undertake to examine the juvenile court's finding that termination of Mother's parental rights to Z.N.S. was in the child's best interests.
The juvenile court's "best interests" analysis focused upon five specific findings of fact: (1) the lack of bonding between Mother and the Z.N.S.; (2) Mother's failure to maintain consistent visitation with Z.N.S. due to her violent outburst during an October 2001 visitation; (3) Mother's failure to provide support for the child while she was in foster care; (4) that additional services would not provide a lasting parental adjustment enabling return of the child in a reasonably foreseeable time; and (5) Mother's demonstrated *540 disinterest or lack of commitment to the child.
After a review of the record, we cannot conclude that the juvenile court abused its discretion in making the above findings. There was substantial testimony indicating that there was no bonding between Mother and Z.N.S., who was only a few months old when removed from the mother's custody. There was also substantial evidence about the incident in which Mother assaulted two DFS workers during a visitation session, leading to a suspension of her visitation with the children for several months.
Further, there was ample evidence that, while Mother had made many efforts to participate in therapy, parenting classes, parent aide programs, and the like, she failed to successfully complete those programs or show lasting progress. Mother had made some positive changes in her life in the month leading up to the termination hearing. However, the juvenile court could properly find such short-term, eleventh-hour changes to be less credible than Mother's prior conduct. See In re N.M.J., 24 S.W.3d 771, 780 (Mo.App.2000). Instead, the juvenile court must assess "the totality of a parent's conduct." Id. After reviewing the evidence before the juvenile court, we cannot conclude that the juvenile court erred in finding that Mother had failed to show a commitment to Z.N.S. and a dedication to working toward reunification.
Similarly, there was conflicting evidence as to whether Mother provided financial support for Z.N.S. while she was in foster care. Mother testified that a set amount was being deducted from her social security disability checks per month. She provided no other substantiation for those deductions, however. There was testimony from a DFS child support specialist that contradicted Mother's claim. In light of the conflicting testimony in this area, we must view the evidence in the light most favorable to the judgment and defer to the trial court's credibility determinations. See In re J.L.B., 9 S.W.3d 30, 37 (Mo.App.1999). Nor do we conclude that the finding appears to be against the weight of the evidence presented.
In reviewing the statutory factors under section 211.447.6, RSMo, we conclude that the juvenile court did not err in finding that termination of Mother's parental rights to Z.N.S. was in that child's best interests. As such, the juvenile court's judgment with regard to Z.N.S. is affirmed. It is reversed with regard to the three remaining children, and remanded with directions to enter its findings, conclusion, and judgment in accordance with section 211.447.4, RSMo.
PAUL M. SPINDEN, Judge and JAMES M. SMART, JR., Judge, concur.
NOTES
[1] All statutory citations are to RSMo 2000, unless otherwise indicated.
[2] The findings made with regards to the putative fathers have been omitted.