165 S.W.3d 505 (2005)
In the Interest of S.T.C.
A.R.C., Appellant,
v.
Greene County Juvenile Office, Respondent.
No. 26298.
Missouri Court of Appeals, Southern District, Division One.
June 23, 2005.
*507 John E. Kelly, Springfield, for appellant.
Bill Prince, Springfield, for respondent.
JAMES K. PREWITT, Judge.
S.T.C. ("Child") was born May 26, 2002 to A.R.C. ("Appellant"). Child was taken into protective custody by the Greene County Juvenile Office on or about May 28, 2002, upon a request for a newborn assessment after Appellant and Child tested positive for cocaine at the time of Child's birth. Child was subsequently placed in alternative care pursuant to a determination by the juvenile division of the Circuit Court of Greene County that he was "abused and/or neglected."
A "Petition to Terminate Parental Rights" was filed on July 10, 2003. Two grounds for termination were alleged in the petition; the first being that Child "has been abused and/or neglected." Under this allegation, the juvenile officer contended that Appellant "suffers from a chemical dependency which prevents her from consistently providing the necessary *508 care, custody and control of the child and which cannot be treated" and, further, that Appellant "repeatedly and continuously failed, although physically or financially able to provide" for Child. As the second ground for termination, it was alleged that Child has been under the jurisdiction of the juvenile court "in excess of one year and that conditions which led to the assumption of jurisdiction still persist or conditions of a potentially harmful nature continue to exist[.]" Appellant's non-compliance "with the terms of her court[-]ordered treatment plan" is cited as support for this contention.
On March 29, 2004, a termination hearing was held. Preliminary to the hearing on termination, counsel for Appellant moved for a continuance on the basis that Appellant was not present, and counsel was not sure that Appellant had received notice of the hearing date. The trial court denied the motion, and the hearing proceeded.
The trial court took judicial notice of the underlying action in the juvenile division. Counsel for Appellant objected "to any matters contained in that file which might be hearsay and which might form the proof of an element of the statutory allegations against my client for which additional in-person or documentary proof is not offered at this point."
The first witness called was Jackie Gibson, an employee at the Lake's Country Resource Center. Ms. Gibson's testimony laid a foundation for certain records admitted into evidence as Juvenile Office's Exhibit 3.
Lorie Cobb, an investigator with the Greene County Children's Division ("Children's Division"), testified that she visited Appellant in the hospital on May 27, 2002, after receiving a request for a newborn assessment. At that time, Appellant stated that she "had done two lines of cocaine" on the Friday preceding Child's birth after learning she had lost her job. Appellant also stated that she had used methamphetamines and marijuana for four years prior to Child's birth and continued to do so "until about the fourth or fifth month" of her pregnancy. Ms. Cobb testified that Appellant began a treatment program in January of 2002, but ceased participation in the program three or four weeks prior to Child's birth. Appellant admitted to Ms. Cobb that she was not able to take care for Child. Custody was taken on May 28, 2002, and that was Ms. Cobb's last contact with Appellant. Ms. Cobb stated that her concerns about Appellant's ability to parent a child included "her drug use and instability to keep a home and a job." An investigative report prepared by Ms. Cobb was admitted into evidence and marked "Juvenile Office's Exhibit 4."
Maria Graham testified that she was "a case manager for alternative care" with the Children's Division. She stated that Appellant had communicated to her a desire to stop abusing substances, "but due to her bipolar diagnosis she sometimes can't help herself." Appellant told Graham that "in the past" there were times that she medicated herself with illegal substances because she could not afford her medications. Appellant indicated in May of 2003 that she had used marijuana.
A treatment plan was established to aid Appellant in addressing the issues which, according to Ms. Graham, Appellant "needed to work on" and which were described by Ms. Graham as Appellant's "continued drug abuse [and] chaotic lifestyle[.]" This plan was initially prepared and instituted by another caseworker, Latisha Clark, and Ms. Graham continued to follow the plan after she was assigned to Appellant's case.
The plan provided, and Appellant agreed to comply with, the following: 1) to cooperate with the Division, informing her social *509 service worker of any changes in address, employment, or household composition prior to changes; 2) to sign all releases of information requested; 3) to attend and actively participate in parenting skill classes if recommended and provide proof of attendance and/or successful completion; 4) to provide and maintain a stable residence which meets minimal health and safety standards; 5) to not allow individuals who may pose a threat to her children to frequent or reside in the household; 6) to maintain a regular visitation schedule with the Child unless visitation is determined to be detrimental to child, at which time visitation will be suspended; 7) to pay a determined amount of child support, and until such an order has been established, to contribute items such as clothing, diapers, formula, etc. for the support of the Child; 8) to maintain gainful employment or have a lawful means of steady support and provide verification of income; 9) to refrain from the use of any drugs and/or alcohol, other than prescribed medication, and submit to random urinalyses if abstinence is in question; 10) to continue participation in and complete substance-abuse treatment and provide verification of completion; and 11) to actively participate in and attend individual counseling with a licensed therapist, if recommended.
Regarding Appellant's agreement to inform the Division of changes in address, employment and household composition, Ms. Graham testified that the last contact she had with Appellant was on December 16, 2003, when Appellant was upset and agitated upon learning visitation had been suspended. Subsequently, Ms. Graham stated that she "made several attempts by phone and four attempts to her home address[,]" to contact Appellant, however those attempts were unsuccessful. Ms. Graham also testified that Appellant was employed at Food for Less and working twenty hours per week. Ms. Graham stated she had not received verification of Appellant's income, although Appellant had reported that she received subsidized rent, food stamps and Medicaid benefits.
Over counsel's objection that the witness was testifying to matters outside of her personal knowledge, Ms. Graham testified that "the best I could discern from the file," Appellant had lived at four separate residences since jurisdiction was taken.[1]
Ms. Graham testified that Appellant's last-known address was a two-bedroom apartment where she had resided for over a year. This was the residence where Appellant resided while Ms. Graham served as Appellant's caseworker. Ms. Graham conceded the apartment met "minimal health and safety standards." During the only home visit made by Ms. Graham, there was a couple living with Appellant who, Appellant explained, were friends who were homeless. Their stay at *510 Appellant's residence was temporary. Ms. Graham stated that although she requested, Appellant never provided her with information to enable her to check on the couple's background.
Ms. Graham testified regarding Appellant's participation in parenting classes, stating that, although she had never referred Appellant to attend a parenting class, to her "understanding," Appellant had been referred to a parenting class within the first six months of initiating the plan. Ms. Graham stated, "We have no verification that [Appellant] completed any parenting classes."
As to Appellant's participation in a substance-abuse treatment program, also a provision of the treatment plan, Ms. Graham testified that upon verification that Appellant was "continuing classes and treatment at Carol Jones Recovery Center[,]" and had submitted several "clean" urinalyses, "the team felt comfortable resuming [previously-suspended] visitation." Ms. Graham stated that Appellant failed to attend the treatment program for approximately six weeks, stating that she had to work. Appellant told Ms. Graham she would resume treatment at the recovery center, however, Ms. Graham received no verification that Appellant resumed treatment.[2]
Ms. Graham stated that Appellant had told her in May of 2003, that she would test positive for marijuana use on an upcoming drug test, and that Appellant had submitted to various drug tests on several occasions, the last being on December 16, 2003.
Ms. Graham said that Appellant was allowed one hour per week of supervised visitation with the Child at the Children's Division offices. However, visitation was suspended "roughly from [the time of] the permanency hearing" in May 2003, until November 2003. Ms. Graham stated "[i]t was [her] understanding" that visits were suspended "until such a time [Appellant] could prove her commitment to continued sobriety through drug and alcohol treatment." When visitation was resumed, upon the team's decision that Appellant was in compliance, there were "roughly three" visits allowed until the last visit on December 9, 2003.[3]
Ms. Graham testified that on December 16, 2003, Appellant learned visitation would again be suspended and that Appellant was "very upset" and "agitated." Ms. Graham told Appellant that visitation was suspended because Appellant had failed to continue treatment at the Carol Jones Recovery Center.
Ms. Graham testified that she was not "aware of" any order directing Appellant to pay support for the child, and that she had "not seen any financial support." During the few visits that Ms. Graham supervised, Appellant did not bring any gifts, although when Appellant last visited the Child, she brought a toy, but took the toy with her when she left.
When asked to identify the barriers to reunification the Division had been able to determine, Ms. Graham responded, over counsel's objection, "[Appellant's] continued substance abuse."
At the close of Ms. Graham's direct examination, the Juvenile Office submitted Exhibit 6, a "Termination of Parental Rights Court Summary" ("termination summary") prepared by Ms. Graham. Counsel for Mother objected "to any matters not within the personal knowledge of the witness that are contained therein *511 which might be used to prove an element of the statutory allegations." The trial court overruled the objection and admitted the exhibit "as to best interest of the child."
In her first point, Appellant contends that the finding that the Child had been abused and/or neglected was against the weight of the evidence, in that there was no evidence outside of hearsay adduced at trial that (1) Appellant continued in her substance abuse; and (2) Appellant failed to provide food, clothing, shelter, or other necessary things for the child. Appellant maintains that Appellant's alleged failure to complete drug rehabilitation programs and any positive urinalyses, evidence upon which the trial court relied in its findings, was outside the personal knowledge of Ms. Graham and "was a matter properly addressed by the chain of witnesses who could cover Appellant's entire chronology in her treatment plan." However, those witnesses did not testify at the termination hearing.
Appellant's parental rights were terminated upon the trial court's findings of neglect, pursuant to § 211.447.4(2), and failure to rectify or remedy, pursuant to § 211.447(3). Where multiple grounds for termination are found by the trial court, this court "will affirm if any one of those grounds is sustainable and termination lies in the child's best interests." In the Interest of D.C.S., 99 S.W.3d 534, 539 (Mo.App. 2003).
Upon review of a trial court's finding that statutory grounds exist for the termination of parental rights, this court must determine whether clear, cogent and convincing evidence supports the finding and reverse only if the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. Id. at 538. "`Clear, cogent, and convincing evidence' is that which instantly tilts the balance in favor of termination when weighed against the evidence presented by the parent whose rights were terminated." Id.
As petitioner, the juvenile officer bears the burden of proof, which must be met by the presentation of "substantial evidence, that is, evidence which, if true, has probative force upon the issues[.]" In the Interest of B.S.B., 76 S.W.3d 318, 324 (Mo.App.2002). Prior to considering the child's best interest, a circuit court must determine whether or not the juvenile officer proved a statutory ground for termination. In the Interest of J.M.N., 134 S.W.3d 58, 65 (Mo.App.2004).
Pertinent to its finding that Child had been neglected, the trial court set forth the following:
b. The child has been abused and/or neglected. Court makes the following findings.
....
ii. Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control [of] the child and which cannot be treated so as to enable the parent to consistently provide the necessary care, custody and control. No evidence was presented that the unknown biological father suffered from an untreatable chemical dependency. Evidence was presented that the mother suffered from such a chemical dependency. The evidence established that the mother and the minor child tested positive for cocaine upon the birth of the minor child. The mother self-reported an extensive history of drug abuse and misuse. A psychological evaluation completed upon the mother in March of 2002 found the mother to be suffering from Amphetamine dependency and cannabis dependency. At the same time of that evaluation, the mother informed *512 the evaluator that she was no longer using, however, subsequent to that evaluation the mother continued to test positive for controlled substances on an ongoing basis. The mother was never able to successfully complete an in-patient or outpatient substance abuse treatment program. Court finds that the mother's chemical dependency directly affects her ability to provide the child with the necessary care, custody and control as evidence by the environs and associations of the mother while abusing controlled substances.
....
iv. Repeated or continuous failure by the parent, although physically and financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental or emotional health and development. There was no contact from any male claiming to be the biological father of the minor child. While the child was removed at birth, subsequent thereto the evidence presented indicated that the mother failed to provide financial or any significant in-kind support for the child.
Appellant contends that the trial court's findings as to neglect are not supported by the evidence and that, after excluding inadmissible evidence, the remaining evidence is not sufficient to support termination of Appellant's parental rights. Reversal on the basis of erroneous admission of evidence is rare in a non-jury case. In Interest of S.T.W., 39 S.W.3d 517, 518 (Mo.App.2000). In reviewing such cases, this court defers to the trial court's ability to consider the evidence that is relevant and admissible, and we presume that the trial court was not prejudiced or influenced by inadmissible evidence. Id. We will not reverse a decision terminating parental rights unless, after excluding inadmissible evidence, the remaining evidence is not sufficient to support termination. Id. However, appeals "involving the termination of parental rights are reviewed more closely than others because of the fundamental liberty interests associated with family and child rearing." In the Interest of J.V.O., 133 S.W.3d 570, 573 (Mo.App.2004).
The juvenile division obtained jurisdiction over the child on or about May 28, 2002. Ms. Cobb testified to the conditions which led to the assumption of jurisdiction at that time, and she stated that she had no further involvement in this case after preparing an investigative summary dated June 29, 2002. Ms. Cobb testified that the concerns which led to the assumption of jurisdiction were Appellant's "drug use and instability to keep a home and a job." That "mother self-reported an extensive history of drug abuse and misuse[,]" as stated in the trial court's findings, was reported by Ms. Cobb in her testimony.
However, "[c]ourts have required that abuse or neglect sufficient to support termination under section 211.447.4(2) be based on conduct at the time of termination, not just at the time jurisdiction was initially taken." In the Interest of K.A.W., 133 S.W.3d 1, 10 (Mo.banc 2004). "Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior." Id. at 9-10.
Maria Graham was the only caseworker, other than Ms. Cobb, who testified at the termination hearing. In reference to the origination of the treatment plan, Ms. Graham refers to a "previous worker," Latisha Clark, who did not appear at trial. The record on appeal is confusing as to the period of time for which Maria Graham served as Appellant's caseworker. Ms. Graham testified that her involvement in this case spanned a period of time "starting *513 in November [2003], until presently.... then again roughly seven months ago  before that, in between workers." Respondent contends that Ms. Graham "was responsible for the case during two periods of time: a seven month period of time from May of 2003; and a period of time beginning in November of 2003 and carrying through to the date of trial on March 29, 2004." At one point in the transcript, Ms. Graham indicates that she "carried this case" at two different time periods ["During the first period of time that I ... carried this case, she was not employed.] To my knowledge during these last months since November of 2003, she's been employed for Food for Less." It appears that Ms. Graham was Appellant's caseworker at least throughout the period from November of 2002 until the time of the termination hearing. Ms. Graham did not testify that Appellant had a chemical dependency in this period of time.
The court's findings reference "[a] psychological evaluation completed upon the mother in March of 2002 found mother to be suffering from Amphetamine dependency and cannabis dependency. At the time of that evaluation the mother informed the evaluator that she was no longer using, however, subsequent to that evaluation the mother continued to test positive for controlled substances on an ongoing basis." We find no evidence in the testimony at the termination hearing regarding "a psychological evaluation completed upon the mother in March of 2002[,]" However, the termination summary, references a "DSM IV Diagnostic Impression, dated 3-20-02[,]" under which "Amphetamine dependence" and "Cammabis [sic] Dependence" is referenced. No where in the testimony do we find where Appellant informed an evaluator that she was no longer using. Neither is there substantial evidence that "mother continued to test positive for controlled substances on an ongoing basis." Furthermore, we are unable to locate evidence supporting the finding that "mother's chemical dependency directly affects her ability" to provide for Child, as there was no evidence of "the environs and associations of the mother while abusing controlled substances," as referenced by the trial court.
Certain contentions contained in the termination summary, admitted as Exhibit 6, are similar to some of the findings in the trial court's judgment which we could not locate in the testimony from the termination hearing. That summary provided a listing of Appellant's drug-testing results and former addresses, and referenced an incident wherein Appellant reported being beaten up by individuals with whom she was living who she accused of dealing drugs. However, this summary cannot be considered in reaching the determination that a statutory ground exists to justify termination of parental rights.
In termination proceedings, § 211.455.3 provides that a "written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child." The issue of "best interests" may be reached only after the court has made a determination that one or more statutory grounds for termination exist, pursuant to § 211.447. "Section 211.455.3 does not itself authorize the court to use the social report to determine whether one of the statutory grounds of termination exists," and should be considered only on the issue of whether termination is in the best interests of the child. In the Interest of J.A.R., 968 S.W.2d 748, 750-51 (Mo.App.1998); In the Interest of S.P.W., 707 S.W.2d 814, 820 (Mo.App.1986). See also In the Interest of J.M.C., 920 S.W.2d 173, 176 (Mo.App.1996) (reversing the court's order of disposition upon finding that inadmissible evidence played a critical role in the court's decision).
*514 "[S]ections 211.477.4(2)(b) and 211.477.4(3)(d) provide that chemical dependency is of sufficient severity to support termination, if it `prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.'" K.A.W., 133 S.W.3d at 11. Here, the petition for termination alleged that Child "has been abused and/or neglected[,]" in that Appellant "suffers from a chemical dependency which prevents her from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the mother to consistently provide such care, custody and control." It also alleges that Appellant has "repeatedly and continuously failed, although physically or financially able to provide the child with adequate food, clothing, shelter, or education...." However, there is no testimony alleging a chemical dependency, nor is there any proof that such a dependency was untreatable or of sufficient severity to support termination.
Considering that Child was removed from Appellant's care at birth, it is not possible for us to say that Appellant is unable to properly care for Child. There was no evidence presented concerning Appellant's ability, physically or financially, to provide for Child. That Appellant was employed on a part-time basis and received subsidized rent, food stamps and Medicaid benefits was in evidence, however the issue of whether Appellant was financially able to contribute to the care for Child was never reached.
We do not find clear, cogent and convincing evidence to support the finding that Appellant suffered from a chemical dependency or that she failed to provide for Child, although physically or financially able to do so. Point I has merit.
In Point II, Appellant contends that the trial court further erred in ordering termination on the basis of the trial court's finding that Child had been under the jurisdiction of the juvenile court for more than one year and that conditions which led to the court's assumption of jurisdiction still persisted [§ 211.447.4.(3)], in that its finding was against the weight of the evidence because the finding references testimony from witness Maria Graham that was "outside the personal knowledge of" the witness who, Appellant maintains, was only "familiar with events in a recent and brief period of time."
Appellant contends that Ms. Graham had no personal knowledge of Appellant's failure to complete parenting classes, and her testimony that Appellant did not maintain stable, appropriate housing "was entirely outside the scope of Ms. Graham's knowledge." Further, Appellant challenges the finding citing concerns regarding drug activity in and about Appellant's premises, stating that the finding "appears nowhere in the trial evidence." Regarding her failure to attend treatment and reference to a positive drug test, Appellant contends there was no support in the record, and "the alleged drug test result itself was actually excluded from evidence." This testimony, Appellant contends, was hearsay.
Most of the testimony tracked Appellant's compliance with the service agreement established by the Division. Section 411.477.4(3) provides that one ground for termination is that the child has been subject to the court's jurisdiction in excess of one year and the conditions leading to the assumption of jurisdiction persist or conditions of a potentially harmful nature continue to exist. Upon such a finding, the trial court must then consider and make findings regarding the parent's progress in *515 complying with the terms of a social service plan, the success or failure of the efforts of the agency to aid the parent, whether the parent suffers from a mental condition rendering the parent unable to provide for the child, and whether the parent suffers from a chemical dependency which prevents the parent from providing the care necessary for the child.
Relevant to this point, the trial court's findings were:
The child has been subject to the court's jurisdiction for in excess of one year, the conditions leading to the assumption of jurisdiction continue to exist, including the ongoing abandonment by the unknown biological father, the ongoing substance abuse by the mother along with the mother's ongoing failure to demonstrate the ability to provide the child with the necessary care, custody and control, that there is little or no likelihood that those conditions will be remedied at an early date so that the child can be returned to a parent in the near future. Court further finds that the continuation of the parent and child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. Court finds that the child is in a stable, appropriate permanent placement. Court makes the following findings:
i. The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms. The Children's Division caseworker testified regarding parental compliance with the provision of the court ordered treatment plans. There was not [a] plan in effect for the unknown biological father due to his absence from and lack of contact with the jurisdiction. The mother was generally cooperative with her caseworker. The mother signed all requested release of information forms. Although referred, the mother failed to complete parenting classes. The mother did not consistently maintain stable, appropriate housing. She has recently obtained stable housing albeit concerns have existed regarding drug activity in and about the premises. The mother progressed to the point where she was afforded unsupervised visitation with the child. Due to behaviors exhibited by the mother those visits were scaled back to supervised status. Visits were subsequently suspended until such time as the mother could demonstrate sobriety and consistent compliance with her treatment plan. In October of 2003, visitation was reinstated but in December 2003, visits again were suspended due to the mother's failure to attend treatment and a positive drug test. The mother did not voluntarily provide child support for the minor. The mother continued to use and abuse controlled substances. The mother did not provide verification of successful completion of substance abuse treatment, having been discharged from several programs due to positive drug screens and non-compliance with the programs. The mother did not provide verification of successful completion of counseling.
....
The trial court also found that the juvenile office was unable to successfully aid Appellant in adjusting her circumstance and conduct due to Appellant's lack of cooperation "and her continued substance abuse," that there was no evidence Appellant suffered from a permanent or irreversible mental condition, and that Appellant suffered from a chemical dependency which prevented her from consistent providing for Child "and which cannot be treated so as to enable [Appellant] to consistently provide such care[.]"
*516 There is no question that there was evidence that Child has been under the jurisdiction of the juvenile court for more than one year preceding the termination hearing. However, the evidence cited by the trial court in support of its findings under this ground does not substantiate the contention that the conditions under which jurisdiction was assumed continued to exist. Those conditions were Appellant's alleged use of cocaine, and, according to Ms. Cobb's testimony, Appellant's "instability to keep a home and a job." There was no evidence at trial that Appellant continued to use cocaine, and, as stated previously, there was no testimony that Appellant suffered from a chemical dependency.
Subsequent to custody being taken, the only reference we find regarding Appellant's alleged substance abuse was, according to Maria Graham, Appellant's admitted use of marijuana in May of 2003. Ms. Graham testified that the barrier to reunification was Appellant's "continued substance abuse." We do not find this to be substantial evidence that "the conditions leading to the assumption of jurisdiction continue to exist[.]"[4]
Furthermore, we found no testimony to support the finding that the continuation of the parent/child relationship greatly diminishes the child's prospects for early integration into a stable, permanent home. There was no testimony received on this issue, although there was evidence that Child is developing normally and that the foster parent "indicated a willingness" to "consider adopting [Child]."
The finding that Appellant failed to keep a stable home or job was not supported by the evidence at trial. Throughout Ms. Graham's service as Appellant's caseworker, Appellant lived at the same address, and there was no testimony that Appellant's housing was inappropriate, or that there was "drug activity in and about the premises." Ms. Graham testified that Appellant was working in a part-time position, at Food for Less.
"[A] parent's failure to comply with a written service agreement does not, in itself, constitute a ground for termination parental rights." C.N.G., 109 S.W.3d 702, 707 (Mo.App.2003). "It is merely a factor to consider in deciding whether the grounds set out in § 211.447.4(3) exist." Id. The evidence at trial regarding Appellant's noncompliance with the social service plan, we believe, was not sufficient to justify termination of her parental rights. That mother failed to complete parenting classes to which Appellant had been referred prior to Ms. Graham's assignment as caseworker was not within Ms. Graham's personal knowledge, as she stated that she thought the referral was made within the first six months of the juvenile court taking jurisdiction, a period of time in which Ms. Graham was not assigned to Appellant's case. Further, there was no testimony that Appellant was "discharged from several programs due to positive drug screens and non-compliance[.]"
As to the finding that Appellant failed to provide verification of successful completion of counseling, Ms. Graham's testimony was: "We had asked that [Appellant], first and foremost, complete her drug and alcohol abuse treatment, and we would continue *517 follow-up therapy as needed from there." She then indicated that they never got "to the second step." [Tr. 45] We cannot find testimony to support this finding.
"The goal of a termination hearing is not to justify termination, but to determine if grounds exist for termination." K.A.W., 133 S.W.3d at 19. "It is only when grave and compelling reasons exist that parental rights should be severed[.]" In the Interest of A.R.S., 609 S.W.2d 490, 491 (Mo.App.1980). "The severance of the parent-child relationship is an exercise of awesome power which requires literal compliance with statutory authority." In re S.P.W., 707 S.W.2d 814, 820 (Mo.App.1986). "By requiring strict compliance with the rules of evidence, we help to insure that a decision to terminate parental rights is made only on reliable, credible and relevant evidence." Id.
"Statutes that provide for the termination of parental rights are strictly construed in favor of the parent and preservation of the natural parent-child relationship." K.A.W., 133 S.W.3d at 12. As stated previously, the state bears the burden of proof, which must be met by the presentation of substantial evidence. Id. at 9. Here, we do not find that the State met its burden. Point II also has merit.
Because we find that neither statutory ground used for termination is supported by clear, cogent and convincing evidence, we must reverse the termination of Appellant's parental rights.
The judgment is reversed.
GARRISON, P.J., dissenting in separate opinion.
RAHMEYER, J, concurs.
PHILLIP R. GARRISON, Presiding Judge, dissenting.
I respectfully dissent from the majority opinion. I believe that the evidence contained in this record was sufficient to support the judgment terminating Appellant's parental rights, and I would affirm the judgment.
S.T.C. was born May 26, 2002, at which time he and Appellant tested positive for cocaine. Appellant reported at that time that: when she got pregnant with S.T.C. she was using methamphetamines, was seeing several different men, and could not remember or couldn't identify S.T.C.'s father; on the Friday before the birth she used cocaine with an ex-boyfriend because she lost her job, was stressed out, and was easily manipulated; she had used both methamphetamines and marijuana for the previous four years, except she said she had stopped that usage four or five months before the birth; and, she had gone into treatment the preceding January but had stopped going to meetings three to four weeks prior to the birth of her child. S.T.C. was taken into custody by the Greene County Children's Division on May 27, 2002. A meeting with Appellant was held the next day at the juvenile office at which time she admitted that she was not able to take care of S.T.C.
Maria Graham ("Graham"), a case manager for alternative care with the Missouri Children's Division in Greene County, testified that the issues identified by the agency that Appellant needed to work on in order to reach the goal of reunification were her continued drug abuse, chaotic lifestyle, and ability to care for the child. Appellant told her that "she wants with all of her heart to not use substances, but due to her bipolar diagnosis she sometimes can't help herself," and that "in the past when she's been unable to afford her medications that she [would] medicate with illegal substances."
A treatment plan was prepared for Appellant, but although a copy of the plan itself was received in evidence, it is not in *518 the record here. There was testimony, however, concerning the contents of the plan and Appellant's compliance with it, or lack thereof. In that regard, a treatment plan can provide the trial court with highly relevant evidence in a termination case. In re K.A.W., 133 S.W.3d 1, 10 (Mo. banc 2004). "A parent's efforts to comply with such a plan will provide the court with an indication of the parent's likely efforts in the future to care for the child." Id. "A lack of effort to comply with a plan, or a lack of success despite effort, can predict future problems." Id.
The treatment plan here provided, among other things, that Appellant refrain from the use of drugs and/or alcohol other than prescribed medications, and she also agreed to random urinalysis. During the time S.T.C. was in foster care, Appellant was referred to three centers for substance abuse treatment and another for treatment for substance abuse and her diagnosis of bipolar disorder. As of the time of the hearing, the agency had received no verification that Appellant had successfully completed any of those programs. As of May 2003, Appellant admitted that she had recently used marijuana and that a scheduled drug test would be positive because of it. Appellant's visits with S.T.C. were then terminated until such time as she could prove her commitment to continued sobriety through drug and alcohol treatment. Those visits were resumed in November 2003 because Appellant had submitted several urine tests that were clean, and she had verification that she was continuing classes and treatment at a recovery center. Thereafter, Appellant had three visits with S.T.C., the last being on December 9, 2003.
There was a Family Support Team meeting on December 16, 2003, during which Appellant's visitation with S.T.C. was apparently discontinued because of her failure to continue with treatment for substance abuse. Appellant contended that she had "forgotten to go to treatment for the [prior] six weeks" because she was busy working at a job. She assured Graham that she would again begin treatment at the same recovery center. Graham told Appellant that the hearing on the termination of her parental rights, originally set for December 2003, had been rescheduled so that she then had four more months to continue sobriety and work towards regaining custody of her son. Because of a request made at that meeting, Appellant went for a drug test that same day, but as of the time of the termination hearing on March 29, 2004, she had not furnished the results of the test. She also had failed to provide verification that she had returned to treatment as promised. Graham testified that she had been unable to contact Appellant after December 16, 2003, although she had made numerous attempts to do so by phone and by going to Appellant's apartment.
Accordingly, Graham had been unable to request other drug tests because of Appellant's failure to respond to attempts to contact her. Graham testified that the barrier to reunification with the child that existed at the time of the hearing was Appellant's continued substance abuse.
The treatment plan also provided that Appellant would maintain employment, have a lawful means of steady support, and provide verification of her income to the DFS worker. Although Appellant had previously existed on subsidized rent, food stamps, and Medicaid due to her bipolar diagnosis, she had been employed at a food market working twenty hours per week since November 2003. Nevertheless, she provided no verification about her earnings, and provided no financial support or items such as clothing, toys, or diapers for S.T.C., with the exception of one toy she brought to her last visit with S.T.C. She *519 took that toy with her, however, at the end of the visit. A parent's duty to support a child does not abate while the child is in the custody of the Division of Family Services. In re A.H., 9 S.W.3d 56, 60 (Mo. App. W.D.2000). A parent who lacks the ability to fully support a child but has the ability to make minimal contributions for their support has a duty to do so. In Interest of S.J.G., 871 S.W.2d 638, 642 (Mo.App. S.D.1994). "`[E]ven a minimal contribution evinces the parent's intent to continue the parent-child relationship.'" Id. (quoting In Interest of M.L.K., 804 S.W.2d 398, 402 (Mo.App. W.D.1991)).
A "Court Summary" prepared by Graham and her supervisor, dated twelve days earlier, was also introduced at the hearing. Appellant's only objection to that summary was "to any matters not within the personal knowledge of the witness that are contained therein which might be used to prove an element of the statutory allegations." Such reports are mandated by § 211.455.3 and are admissible over hearsay objections. In Interest of T.G., 965 S.W.2d 326, 332 (Mo.App. W.D.1998); In Interest of S.J., 849 S.W.2d 608, 611-612 (Mo.App. W.D.1993). In addition, no effort was made to identify which portions of the summary the hearsay objection would allegedly apply to. When a blanket objection is made to an entire offer of evidence, if any parts of the exhibit are admissible, the blanket objection should be overruled. Friese v. Mallon, 940 S.W.2d 37, 40 (Mo. App. E.D.1997). In this case, Appellant's counsel objected only to the portions of the exhibit "not within the personal knowledge of the witness that are contained therein," thus implying that there were portions that were within her knowledge. As such, the objection was insufficient.
It has been held that § 211.455.3 does not itself authorize the court to use the social report to determine whether one of the statutory grounds of termination exists, and that unless another ground for admission exists for all or part of the report, it should be considered by the court only on the issue of whether the termination is in the best interests of the child. In Interest of J.A.R., 968 S.W.2d 748, 750-751 (Mo.App. W.D.1998). That was not the basis of Appellant's objection to the report in this case, and in fact, counsel objected to only those portions of the report that were hearsay that "might be used to prove an element of the statutory allegations."
The "Court Summary" documented the following: a diagnosis during Appellant's pregnancy of dependence on amphetamines and cannabis; her inability to maintain employment; that she was then living in a homeless shelter; that she had not completed parenting classes; that she had lived in five different locations during the thirteen months prior to the hearing; that Appellant had told Graham that four months before the birth of S.T.C. she was living with people who were dealing drugs and had beaten her; that in November 2003, Appellant had physically taken S.T.C. out of a foster mother's arms and was "very paranoid and bouncing off the walls"; that Appellant had either cancelled or failed to show up for visitations with S.T.C. five times, once not knowing what day it was and once saying she had forgotten that S.T.C. was being brought to her for a visit; that on December 16, 2003, Appellant tested positive for marijuana after saying she had "forgotten" to attend treatment for the past three to four weeks; and that between August 2002 and December 2003, she had tested positive for amphetamines three times, for cocaine three times, for prescription medications eight times, and for marijuana three times. It also revealed that Appellant had been discharged from a treatment center in both June 2003 and November 2003 for "failure to comply."
*520 In this case, Appellant contends that there was not sufficient competent evidence to support the judgment finding grounds for termination. In addition to the evidence referred to above, the record reveals that the records of the Lakes Country Resource Center ("Lakes Country") concerning Appellant were introduced at the hearing without objection. Lakes Country is a rehabilitation center for people with "disabilities or problems like that" and which has affiliates that treat for substance abuse. The Lakes Country records, however, are not included in the record on appeal in this case. Likewise, those records have not been filed as an exhibit in this case.
On appeal the trial court's judgment is presumed valid and the burden is on an appellant to demonstrate incorrectness of the judgment. Campbell v. Rickert, 938 S.W.2d 282, 285 (Mo.App. S.D.1997). Therefore, it is an appellant's responsibility to file the transcript and prepare a legal file so that the record contains the evidence necessary for such a determination. Flora v. Flora, 834 S.W.2d 822, 823 (Mo. App. E.D.1992). The record on appeal must contain all of the record, proceedings, and evidence necessary to the determination of all questions to be presented to the appellate court for decision. Rule 81.12(a). In order to review Appellant's contention that there was not substantial evidence in this case to support the judgment of termination, it would be necessary that we have all the evidence before us. Such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appellant. In re Carl McDonald Revocable Trust, 942 S.W.2d 926, 932 (Mo. App. S.D.1997).
Finally, the termination hearing in this case was held on March 29, 2004. Graham had been unable to contact Appellant between December 16, 2003, and the hearing date, and Appellant failed to appear for the hearing itself. This was after Appellant dropped out of treatment for substance abuse and failed to report the results of a drug test requested by Graham.
For the above reasons, I would affirm the judgment of the trial court.
NOTES
[1] In objecting, counsel stated:

I'm going to object or ask to voir dire, one or the other here. I ... think Maria's identified herself as a worker that's had a window in time of this, but she's being asked general questions about what the agency's experience has been. I ... don't want to sit here and ask  object to every single question, but I ... think she's being asked for something that might not be within her personal knowledge. And I am going to object to those things if it appears she's just recalling from the record or looking at her file. She hasn't been the only worker, yet she's answering questions as if she were.
In overruling counsel's objection, the trial court stated:
"[A]s to cross-examination you can determine the exact source of some of it if you have questions about that, Mr. Kelly. But, again, I think the nature of the work that the caseworker does and the requirement preparing social histories necessitate information from other people which is admissible at least as to the best interests of the child. And so the objection'll be overruled as to the ... if it's as to hearsay that you're indicating it."
[2] The termination summary states Appellant "had forgotten to attend treatment for the past 3 to 4 weeks."
[3] The termination summary lists four visitations.
[4] When Ms. Graham testified that Appellant's visitation was suspended in December of 2003 because Appellant "failed to continue treatment at Carol Jones Recovery Center[,]" and because Appellant "also provided a positive drug test for marijuana[,]" counsel objected on the basis that Graham's testimony was hearsay. The trial court indicated at that point that it would "receive it for best interest," and "I'll sustain it may be hearsay I think as to legal ground issues."